Whitaker, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover (1) for damages for delays caused by defendant; (2) for liquidated damages deducted; and (3) for the cost of putting on a copper roof.
Plaintiff had a contract for the construction of a Post Office at Weston, West Virginia. It was to be constructed under the supervision of Stephen W. Ford, an architect of Clarksburg, West Virginia, who was authorized to prepare all drawings and specifications, to pass on all shop drawings, to approve or reject architectural samples and all ornamental work, colors, and finishes. Mr. Ford severed his connection with the work on June 22, 1933, and thereafter his duties were assumed by the supervising architect in Washington.
The contracting officer granted extensions of time totaling 238 days for delays caused by the defendant. The plaintiff claims damages for these delays, and also for others for which no extensions of time were granted.
The delays for which extensions of time were granted were occasioned by the following:
(1) 15 days’ additional time required for lowering the footings to a depth greater than that originally specified;
(2) 19 days’ delay for time lost due to the failure of the architect to promptly approve the structural steel drawings;
*27 (3) 180 days’ delay in providing terra cotta models;
(4) 24 days’ delay on account of extremely cold weather during which plaintiff had to work caused by defendant’s previous delays.
In addition to these delays, plaintiff claims damages for the following delays for which no extensions of time were granted:
(5) 18 days during which the work was suspended while awaiting instructions for lowering the footings;
(6) 27 days’ delay in supplying details and drawings for millwork and in approving the drawings and samples for marble;
(7) 37 days’ delay due to the reluctance of subcontractors to fulfill their contracts after the expiration of the original period of the prime contract;
(8) 27 days’ delay due to defendant’s failure to promptly make final inspection of the building.
DELAYS EOR WHICH EXTENSIONS OE TIME WERE GRANTED
(1) 15 days' additional time required for lowering the footings to a depth greater than that originally specified
Plaintiff is not entitled to recover damages for the period of this delay. The defendant had the right to make changes in the contract and, therefore, in doing so it did not breach the contract and no damages can be recovered for the extra time required. United, States v. Rice and Burton, Receivers. 317 U. S. 61. See (5) below.
(2) 19 days' delay for time lost due to the fail/wre of .the architect to promptly approve the structural steel drawings
Plaintiff received notice to proceed on January 17, 1933. The work was to be completed in 360 days, or by January 12, 1934. On February 14, 1933 plaintiff submitted to Mr. Ford, the architect, various samples and drawings. Six days later Mr. Ford wrote plaintiff that he had not received the instructions from the Treasury Department necessary for him to approve these samples and drawings, and suggested to plaintiff that he send all drawings and samples direct to Washington, although the contract named Mr. Ford as the *28 person to approve or reject them. Accordingly, plaintiff submitted to the supervising architect in the Treasury Department the reinforcing steel drawings on February 27, 1933, and the structural steel drawings on March 8, 1933. On March 17 and 22 the supervising architect wrote plaintiff that the samples and drawings were being returned to Mr. Ford for his approval. These were not approved until April 28, 1933, and as a result work on the building was at a standstill from May 2 to May 20, both inclusive, a total of 19 days. This was a delay solely occasioned by the defendant’s representatives and, therefore, the plaintiff is entitled to recover the damages resulting therefrom.
(3) 180 days’ delay in providing terra cotta 'models
The contract required defendant to furnish plaintiff with terra cotta models. Plaintiff requested it to do so on February 17, 1933, but received no reply to his request. He repeated this request in letters directed both to Mr. Ford and the supervising architect on May 4, May 17, June 14, and June 22. As a result of defendant’s long continued failure to furnish the models the terra cotta was not delivered on the job until February 10,1934, although plaintiff repeatedly complained of the delay and notified defendant of the additional expense the delay was causing him.
The defendant recognized its default and granted an extension of 180 days on account thereof. Plaintiff is .entitled iso recover for the damages caused by. this delay.
(4) %4 days’ délo/y on accotmt of extremely cold weather■ during which plaintiff had to work caused by defendants previous delays
The building was due to be finished on January 12, 1934. On account of the foregoing delays by the defendant the work was extended' throughout the winter of 1933-1934. It was one of the coldest winters recorded in the preceding twenty years, and on account thereof plaintiff’s work was delayed. The defendant recognized this and granted him 24 days’ additional time on account thereof. Plaintiff is entitled to recover damages suffered on account of this 24 days’ delay.
*29 DELAYS FOR WHICH EXTENSION'S OF TIME WERE NOT GRANTED
(5) 18 days during which the ivorJc was suspended while-awaiting instructions for lowering the footings
While plaintiff was excavating for footings on March 6,. 1933, it was found that the depths originally specified were-not sufficient to reach solid bearing. The construction engineer ordered suspension of the work until defendant could, determine what it wanted to do. It did not make this determination until March 24, 1933. Plaintiff asked for the cost of superintendence and overhead for 15 days of the total of' 18 days while it was awaiting instructions. This was disallowed by the contracting officer.
It is said that this action of the contracting officer is made-conclusive by article 9 of the contract. We do not think so. That article relates alone to the assessment of liquidated damages for delay in completing the contract; it does not. relate to the defendant’s liability for damages resulting from a delay caused by it. On the question of the assessment of liquidated damages the findings of fact of the contracting officer, or the head of the department in case of appeal, on the cause and extent of delay were made final and conclusive ; but it is not provided that they are final and conclusive on the question of the defendant’s liability for damages.
The contract provides for the assessment of liquidated' damages for each day of delay beyond the termination of' the contract period, but it provides that liquidated damages-shall not be assessed—
* * * because of any delays in the completion of' the work due to unforseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, fires, floods, epidemics,, quarantine restrictions, strikes, freight embargoes, and unusually severe weather, or delays of subcontractors due-to such causes: Provided fwrther, That the contractor shall within ten days from the beginning of any such delay notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the-extent of the delay, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only *30 to appeal, within 30 days, by the contractor to the head of the department concerned, whose decision on- such appeal as to the facts of delay shall be final and conclusive on the parties hereto.
The whole subject in the minds of the parties was the ■assessment of liquidated damages for delay; they did not have in mind suits against the Government for damages for •delays it had caused. On the question of the assessment of liquidated damages the findings of the contracting officer as to the facts and the extent of delay were made final and -conclusive, subject to appeal to the head of the department; but on the question of whether or not the defendant had ■caused a delay for which it should be mulcted in damages, they have not agreed that his findings of fact should be final ■and conclusive.
There is a sound reason why the parties should have been willing to agree that his findings of fact should be conclusive in one instance and not. in the other. In the first it was necessary for the 'contracting officer to determine only that the contractor should be excused for the delay; in the latter it was necessary for him to determine whether or not the ■defendant had breached its contract by doing something-alleged to have delayed plaintiff. The defendant well might have been willing to submit to the final judgment of the contracting officer and head of the department the assessment of liquidated damages in its favor, but would not have been willing to submit to the final judgment of either of them the question of whether or not it should respond in damages.
Congress has conferred exclusive jurisdiction on this court, and in certain cases on the district courts, to decide claims against the Government. It has consented to be sued only in these forums. Can, then, some agent of the Government other than Congress validly contract that someone other than this court or a district court may finally determine the facts upon which liability of the defendant rests? Ordinarily, when the facts are once found, the case has been nine-tenths decided. Since Congress has vested in this court and in the district courts exclusive jurisdiction of cases against the Government, it is not to be presumed that the parties in-tendeddhat some other tribunal should make findings of fact *31 that would be binding on us. If they did, their agreement Avould be in violation of the Act of Congress vesting jurisdiction in this court and the district courts, and therefore void.
We have consistently held that neither article 9 nor article 15 of the Standard Government Contract gives the contracting officer the power to determine a contractor’s claim for damages for delay. See Phoenix Bridge Co. v. United States, 85 C. Cls. 603, 629, and Plato v. United States, 86 C. Cls. 665, 677. See also United States v. Rice and Burton, Receivers, 317 U. S. 61, 67.
In a suit against the United States for damages for delay, we do not think the contracting officer’s findings of fact on the cause or extent of delay are conclusive.
We are of the opinion that 18 days was an unreasonable time for the Government to take to determine to what depth the footings should be lowered. With reasonable diligence this determination could'have been made within not more than three days. Plaintiff’s request for his cost of superintendence and overhead for 15 days’ delay was entirely reasonable. He is entitled to recover for this delay.
(6) ¡27 days” delay m supflying details and drawings for millwork and in approving the drawings and samples for marble
The extension of 19 days, discussed in (2) above, was for delay from May 2 to May 20, 1933. Plaintiff also claims 27 days’ delay from May 20 to August 15, 1933 due to the Government’s delay in supplying details and drawings for the millwork and in approving the drawings and samples for granite or marble. There is no doubt but that plaintiff was delayed for some time on this account, but the commissioner has found that the proof does not satisfactorily show the extent of the delay. The plaintiff’s proof is unsatisfactory, but he does say that he could have completed the work done between these two dates 27 days earlier had it not been for •these delays.
But whether or not this proof would be sufficient for us to determine that he had in fact been delayed this length of ■time, we do not think he is entitled to recover damages for *32 any delay during tliis period because we think he has waived any claim he might have had therefor. The contracting officer several different times requested plaintiff to submit a statement of the dates and causes and extent of each delay, with an accompanying recommendation of the construction engineer. Plaintiff asked the construction engineer to-recommend an extension of time of 27 days for the delay during these dates, but he refused to do so, and when plaintiff wrote the contracting officer on April 13,1934 setting out his several claims for extensions of time on account of delays, he did not mention this delay of 27 days. At the time he wrote this letter he had already been granted the 15 days, the 19 days, and the 180 days’ extensions of time discussed above, but he requested a further extension of 24 days on account of having to do his outside masonry work during cold weather. The 24 days were, allowed him. By failing to request an extension on account of the 27 days’ delay from May 20 to August 15, 1933 and by requesting an extension on another account at the same time, which was granted, we think that he has waived his claim to the 27 days’ delay. It may be that had he requested both the 27 days and the 24 days, the 24 days would not have been granted unless he agreed to abandon his claim for the 27 days.
After the contract was finished on October 10,1934, plaintiff requested an extension of time of 37 additional days, next discussed, but this was for a cause other than the delay in furnishing the drawings for the millwork and in approving the drawings and samples of the granite. The extension of time of 37 additional days was not granted, but his letter of October 10,1934 is further evidence of the fact that plaintiff had waived and abandoned his claim for the 27 days’ delay.
(7) 37 days' delay due to the reluctance of subcontractors to fulfill their contracts after the expiration of the original period of thé prime contract
Prior to the time that the building was ready for the work to be done by some of the subcontractors, the Codes of Fair Competition under the National Industrial Eecovery Act *33 had been adopted, increasing labor and material costs; in addition, the Civil Works Administration had begun a number of projects in the vicinity of plaintiff’s contract increasing the demand for labor which also increased labor costs. Because of these conditions, some of the subcontractors refused to perform their contracts for the amounts originally agreed upon, and plaintiff had to threaten suits against them in order to compel them to do so, and in some instances had to pay them more than the original contract price. The commissioner has found, and we also have found, that this resulted in delays aggregating 37 days.
However, plaintiff is not entitled to recover therefor, because he did not notify the contracting officer of these delays at the time they occurred. He made no claim therefor until after the job was completed on October 10, 1934. The contract required plaintiff to notify the contracting officer of the cause and extent of the delay within ten days thereafter. He failed to comply with this provision of the contract, and under the Supreme Court’s decision in Plumley v. United States 226 U. S. 545, he is not entitled to recover therefor.
It is true that the provision of the contract requiring notice of the delay is in the same article which makes the contracting officer’s decision on extensions of time for delays final and conclusive, and that we have held, supra, that his findings are not conclusive in a suit by the plaintiff to recover damages for delay. We said that this article had reference to the assessment of liquidated damages against the contractor and that it could not have reference to actions against the defendant for damages for delays because, if so, it would be in conflict with the Act of Congress conferring on this court and, in certain cases, on the district courts jurisdiction of suits against the United States. However, a requirement that notice of a delay be given as a condition precedent to the maintenance of a suit against the United States for resulting damages would in no way impinge upon the jurisdiction conferred on this court; it would not result in substituting a forum other than the one prescribed by Congress for the trial of suits against the Government. On the other hand, it does serve the useful purpose of giving the person re *34 sponsible for the delay the opportunity of removing the-cause of it and thus minimizing the damage. The validity of such a provision cannot be questioned.
Although we think it is the better view.that the whole article has reference only to the assessment of liquidated damages, we are constrained by the Supreme Court’s decision in the Plumley case, supra, to hold it applicable, so far as notice of the delay is concerned, to suits to recover damages-therefor.
We have found that plaintiff is entitled to recover for defendant’s delay in notifying him of the depth to which it wanted the footings lowered, although plaintiff did not notify the contracting officer of this delay, because this w7as a matter within the knowledge of the contracting officer and,, hence, notification was unnecessary. So far as the record shows, the contracting officer had no information about plaintiff’s difficulty with his subcontractors. Piad he been advised of it he might have straightened the matter , out without any delay.
(8) 27 days’ delay due to defendant’s failure to promptly malee final inspection of the building
The specifications required the contractor to give the supervising architect from 7 to 10 days’ advance written notice of the date when the building would be ready for final inspection. Plaintiff gave such notice on September 17, 1934, stating that the building would be ready for final •inspection on September 27,1934. Inspection by the general inspector was not made until October 16,1934, and inspection by the mechanical inspector was not made'until October 24,. 1934. Both of them made lists of minor omissions and defects, which were corrected by November 26,1934. Plaintiff claims 27 days’ delay on account of this.
Defendant did. fail to make inspection promptly, but we are of opinion that this did not result in any damage to-plaintiff, since the defendant, with plaintiff’s consent, occupied the building on October 1, 1934, and thereby relieved plaintiff of any responsibility for the care of the building prior to the date of making inspections. No work was *35 expected of him until after the inspections were made, and,, therefore, he did not have to keep on the job his superintendent or workmen, and, so far as we are able to see, was not put to any extra expense on account thereof.
In addition to this, plaintiff made no complaint to the contracting officer of this delay in inspection. In Plumley v. United States, supra, it was held that it was necessary that plaintiff notify the contracting officer that he would be damaged if inspection was not promptly made. Evidently the contracting officer in the instant case did not think it made a great deal of difference when final inspection was made, since the building was already occupied ;■ he evidently did not think that the plaintiff would be hurt by any delay in inspection, and since plaintiff did not notify the contracting officer that he was being damaged thereby,, we think he is not entitled to recover, even if he in fact suffered any damage at all.
damages
Plaintiff claims damages as a result of these delays as-follows: (1) cost of superintendence and job overhead; (2) equipment rentals; (3) increased price of materials; (4) loss of discounts for prompt payment of bills; (5) extra cost of doing certain work; (6) additional travel expenses required; (7) extra cost due to inefficiency of labor; (8) loss-on insurance policy; (9) extra cost of subcontracts; (10) claim for extra photographs.
(1) Cost of superintendence and jot overhead. — The only controversy about this element of damage is the reasonable' value of plaintiff’s services as his own superintendent and engineer on the job. The commissioner has allowed $3T5.G0' a month for these services. The proof shows, however, that, immediately prior to the instant contract plaintiff was drawing a salary of $600.00 a month as superintendent for the-Pierce Steel Pile Corporation, plus $115.00 a month for a room at the Shoreham Hotel, and that at the time of testifying he was acting as superintendent for the C. & R. Construction Company of Boston, where he drew a salary of $600.00 a month, plus a commission of 3 percent of the profit *36 made on the job. In view of this, and since plaintiff on this particular job was acting both as his own superintendent and ■engineer, we think his services were reasonably worth not less than $750.00 a month. It is agreed that the other overhead costs were $4.95 a day. This makes a total daily cost ■of superintendence and overhead of $29.95.
We have found that the defendant is responsible for the •damages suffered by plaintiff for 238 days of delay caused by the defendant. At $29.95 a day for the cost of superintendence and job overhead he was damaged on this account in the total sum of $7,128.10. He is entitled to recover this .amount.
(2) Equipment rentals. — Plaintiff claims damages for the time certain of his equipment remained idle on account of ■defendant’s delays. This equipment was a Rex' mixer, a Chevrolet coupe, a saw rig, a derrick crab, 10,000 square feet •of floor pans, small tools, and office furniture. He assumes that all this equipment was idle for the entire period of the delays, but there is no proof of this. The work was not at a ■complete standstill for all this time and some of this equipment may have been used for a part of the time.
The proof tends to show that the job could have been completed 238 days earlier than it was except for defendant’s •delays, and if so, the equipment could have been used on •other jobs or rented much earlier than it was. But, whether or not all this (equipment was needed on this job until the •end of the contract, or how much longer it was necessary on this job than it would have been had there been no delays, the proof does not show.
The actual damage must be proven more definitely than has been done in this case. Cf. Eastern Contracting Co. v. United States, No. 44226, C. Cls. decided October 5, 1942. However, the defendant’s delays have been many and long ■and inexcusable, and it is beyond doubt plaintiff has been .greatly damaged thereby, and in part by the loss of use of this equipment.
This was plaintiff’s first contract; formerly he had worked as superintendent for other contractors. When he entered upon the work he had enough money saved up to pay his ■operating costs and to discount his bills. The purchase price *37 of Ms equipment was payable in installments, but on account of defendant’s repeated delays he could not keep up his payments and lost his equipment, for which he had paid $4,405.25' (exclusive of the office furniture). According to plaintiff’s-figures the depreciation, upkeep, and interest on the investment in this equipment (exclusive of the office furniture) during the original contract time would have been $3,096.00. If this be deducted from the cost of the equipment, plaintiff would have suffered a loss of $1,309.25; but we think, plaintiff’s figure on the depreciation, etc., is high. We think $1,905.25 is more accurate. Deducting this from the cost of the equipment would result in a loss of $2,500.00.
Under the peculiar facts of this case we think plaintiff should recover on this account the sum of $2,500.00.
(3) Increased price of materials. — As a result of the adoption of the Codes of Fair- Competition under the National Industrial Kecovery Act in the early part of 1934 the cost of building materials substantially increased over 1933-prices. Since plaintiff’s contract had to be largely performed thereafter on account of defencjant’s delays, plaintiff’s material costs were increased by $644.64. He is entitled to recover this amount.
(4) Loss of discounts for prompt payment of bills. — At. the beginning of the job plaintiff discounted his bills for materials, and would have had sufficient funds to do so throughout the job except for the delays, but these delays; so depleted his resources by delaying him in securing progress payments from the defendant that he was unable to' continue to discount his bills, and he lost in this way $302.30.. This he is entitled to recover.
(5) Extra cost of doing certain work. — On account of the' delays, making it impossible for plaintiff to do his work in an orderly manner, he was put to extra expense of doing-certain work in the amount of $1,907.05. He is entitled to' recover this amount.
(6) Additional travel expense. — The commissioner found that the plaintiff was required to spend about.$576.00 on travel expense to Clarksburg, West Virginia, and Washington, D. C., in efforts to prevent or minimize further delays. *38 The defendant takes no exception thereto. He is entitled to recover this item.
(7) Extra cost due to inefficiency of labor. — The commissioner has found that plaintiff’s proof is not sufficient to support this item. We agree.
(8) Loss on insurance policy. — On account of defendant’s •delays and the consequent depletion of plaintiff’s-financial resources he was compelled to surrender a life insurance policy in order to realize thereon its cash value. He claims a loss on the surrender of this policy as an element of his •damage, but in our opinion he sustained no loss thereon. Plaintiff no doubt did not wish to surrender this policy when he did, but was forced to do so by defendant’s delays, but he suffered no monetary loss on this account. He received its full cash value.
(9) Extra cost of subcontracts. — We have held, supra, that plaintiff is not entitled to recover on account of this item.
(10) Claim for extra photographs. — Plaintiff claims the •cost of taking photographs to sustain his claim for expenses incurred for erecting an exterior masonry scaffold and for removing and rebuilding the boiler pit. This is an expense ■of prosecuting his claim. Such expense is not an element ■of damage for which recovery may be had.
LIQUIDATED DAMAGES DEDUCTED
The contract time was extended by the contracting officer until September 7, 1934. The building was occupied by the defendant on October 1, 1934. Liquidated damages were assessed for the 24 days between the expiration of the contract time and the occupation of the building in the amount of $720.00. This amount the plaintiff seeks to recover.
The contracting officer found that the completion of the building had been delayed this length of time due to the failure of the plaintiff to give the work his personal supervision or to have on the job a competent foreman or superintendent. The Secretary of the Treasury approved the findings of the contracting officer on February 12, 1935.
The commissioner has found that the work could have been completed 24 days earlier had the work been given adequate *39 ■supervisión, but be also found that the plaintiff, who was his own superintendent, was unable to give the work the necessary supervision on account of the defendant’s previous delays, which necessitated his absence from the work in an effort to establish new lines of credit and to locate his subcontractors and induce them to go on with the work. This is not denied by the defendant. As we stated above, plaintiff’s resources were adequate for him to have completed the job and to have discounted his bills had he not been delayed by the defendant. We have also found that the subcontractors were reluctant to go on with the work because of the increased costs resulting from the enactment of the National Industrial [Recovery Act and the adoption after the original completion date of the contract of Codes of Fair Competition. Plaintiff, therefore, was prevented from giving the work adequate supervision by the acts of the defendant in delaying the completion of the job.
Had an extension of time been granted for the 18 days ■during which the work was suspended while defendant’s representatives were making up their minds to what depth they wanted the footings lowered, the completion date would [have been September 25, 1934. There is no conceivable ¡reason why this extension should not have been granted. It was a delay caused in part by latent subsurface conditions, ¡and in part by the failure of defendant’s representatives to act promptly. The plaintiff was in no possible way responsible therefor. Under articles 4 and 9 he was clearly entitled to an extension of these 18 days. Had this extension been granted, the defendant’s occupation of the building would have been only five or six days after the completion date.
The assessment of liquidated damages under all these cir-cumstances was altogether unreasonable and must be set .aside as arbitrary.
The plaintiff is entitled to recover $720.00 on account of liquidated damages deducted.
CLAIM FOR COST OF REMOVING AND INSTALLING ROOF
Plaintiff’s last claim is for the cost of removing a tin roof .and installing a copper one.
The contract drawings specified a tin roof over the load *40 ing platform. In tbe middle of tbe drawing showing this roof there was written in large capital letters the words “TIN ROOF.” The specifications said nothing about the kind of roofing for this loading platform, although they did provide for the kind of roofing for other portions of the building.
Prior to installing the roof the plaintiff sent a sample of the tin he proposed to use for this purpose .to the supervising architect for approval. It was returned approved. Plaintiff then proceeded to install the tin roof. This was done under the supervision of the construction engineer, and at the end of the month plaintiff was paid for the roof.
About a month later a traveling inspector from the supervising architect’s office told plaintiff that this roof should have been of copper instead of tin, because the specifications provided that “all exterior sheet metal work shall be of copper.” Plaintiff protested. The construction engineer wrote the supervising architect for instructions. The supervising architect then reversed his former interpretation of the plans and specifications and held that a copper roof was required, and required plaintiff to remove the tin roof and replace it with copper.' This plaintiff did under protest and at a cost of $319.44.
The drawings and specifications, propei'ly interpreted, plainly call for a tin roof. The provision in the specifications that “all exterior sheet metal work shall be of copper” is a general provision. The provision in the drawings calling for a “tin roof” is a specific provision relating to this particular exterior sheet metal. Anybody reading the specifications and looking at the drawings would of necessity come to the conclusion that it was intended that this roof should be of tin. The supervising architect was of this opinion when plaintiff presented to him the sample of the tin he proposed to use for this roof.
The defendant says, however, that the interpretation of the plans and specifications by the contracting officer is made final and conclusive. So it is. But the contracting officer at first interpreted them to call for a tin roof. There is nothing in the contract or the specifications that gives him the right to reverse his ruling after the work has been done and to require plaintiff to tear out work already done in *41 accordance with his instructions and replace it with something else:
We are of the opinion that he was bound by his original ruling and was not permitted under the contract to change it later after the work had already been done in accordance with his instructions.
The plaintiff is entitled to recover on this item the sum of $319.44.
The plaintiff is entitled to recover of the defendant the total sum of $14,091.53, for which judgment will be rendered. It is so ordered.
MaddeN, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.
JoNES, Judge, took no part in the decision of this case.