Whitaker, Judge,
delivered the opinion of the court:
Plaintiff sues the defendant for the sum of $31,875.28, alleging that it breached its contract with plaintiff for the construction of a post office at Poughkeepsie, New York, in that it changed the stone to be used in the construction of the building from bluestone and granite to rubble stone. Plaintiff also says that liquidated damages for 4 days’ delay were improperly deducted, and that it was required to use a bluestone which was more expensive than that specified in the specifications.
The building was originally designed to be faced with bluestone below the level of the first floor and with split-face granite above the level of the first floor, with a belt course, quoins, window sills, lintels, and arches of bluestone. This was changed to call for a building constructed of rubble or field stone and certain bluestone.
The original contract provided for a consideration of $330,000. The head of the department found that the changes entitled plaintiff to an equitable adjustment of its contract price in the amount of $30,393.93. Plaintiff says *80 ¡that these changes were beyond the scope of the contract and, therefore, do not come within the provisions of article 3 thereof permitting the contracting officer to make changes within the general scope of the contract. The change was merely from one character of stone to another, and in our opinion was within the general scope of the contract. Cf. General Contracting and Construction Co. v. United States, 84 C. Cls. 570. Even if the change was beyond the scope of those permitted, the plaintiff acquiesced in the making of it; it claimed no breach of contract, but continued performance of it as changed. The change made, therefore, is go,v-erned by articles 3 and 15 of the contract.
Article 3 permits the making of changes and provides for an equitable adjustment in the amount due under the contract and for an adjustment in the time required for its performance. Plaintiff originally submitted a proposal for an increase in the contract price of $86,568.97 for doing the work as changed, but later increased this to $92,959.26. However, this was later reduced to $45,395.57, but this figure did not include additional, overhead due to delays incident to the changes made, additional temporary heat, and other items. The contracting officer considered this proposal excessive and proceeded to determine the dispute under article 15 of the contract. This article provided, in part:
* * * all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, * * *.
Since what constitutes an equitable adjustment is a question of fact (United States v. Callahan-Walker Construction Co., 317 U. S. 56), this article authorized the contracting officer and the head of the department to settle the dispute. It was a dispute over the equitable adjustment to be made for a change authorized by article 3, and, therefore, was a dispute arising under the contract, except for any damages that may have been incurred because of any unreasonable delay in deciding on the change. Article 3 contemplates that changes desired should be made without unreasonably delaying the contractor. If there was an *81 unreasonable delay, there was a breach of the contract. Magoba Construction Co. v. United States, 99 C. Cls. 662, 690. Such a dispute the contracting officer is not authorized to decide finally; his authority is limited to disputes “arising under the contract”; it does not extend to disputes over a breach of the contract, for this is one arising outside of the contract. Cf. Langevin v. United States, No. 43903, decided May 3, 1943 (100 C. Cls. 15).
Plaintiff, however, does not claim there was an unreasonable delay in making the changes and we assume there was none. Therefore, the dispute over what was an equitable adjustment on account of the change was a dispute arising under the contract, which the contracting officer was authorized to decide.
The contracting officer found that an equitable adjustment of $23,000 was proper. Plaintiff appealed to the head of the department, who, after evidently careful consideration, rendered an opinion holding that $30,393.93 was the proper equitable adjustment.
Article 15 makes his decision on such a question final and conclusive. There is nothing in the record to show that his action was arbitrary or capricious or was grossly erroneous; on the contrary, the authorized representative of the head of the department, the Honorable John W. Hanes, then Under Secretary of the Treasury, evidently gave the matter careful and painstaking consideration. We, therefore, are concluded by his findings, with the exception above stated, unless the plaintiff is correct in saying that they are void and of no effect because concurred in by John M. Carmody, Administrator of the Federal Works Agency.
At the time the contract was entered into the Public Buildings branch of the Procurement Division was under the jurisdiction of the Treasury Department, but on July 1, 1939, its functions were vested by Executive Order in the Public Buildings Administration of the Federal Works Agency. For fear there might be some question as to the proper person to settle disputes arising under the contract, it was arranged between the Under Secretary of the Treasury and the Administrator of the Federal Works Agency that the Under Secretary would render a decision in the *82 case and would submit it to the Administrator for review. This was done, and the Administrator concurred in the decision of the Under Secretary. The fact that he agreed with the Under Secretary’s decision did not make it any the less the decision of the Under Secretary. The proof shows that his decision was rendered without prior conference with the Administrator and was uninfluenced by the views of the Administrator. But even though there had been a prior conference between these two men, there is nothing whatever in the proof to show that the judgment of the Administrator of the Federal Works Agency was substituted for the judgment of the Under Secretary. Whether or not in arriving at his judgment he may have secured the opinion and advice of a stranger to the contract, there is nevertheless nothing to show that the judgment rendered by him was not his own independent judgment. Jacob Schlesinger, Inc. v. United States, 94 C. Cls. 289, 307; cf. Public Service Commission of Missouri, et al., v. Brashear Freight Lines, Inc., et al., 312 U. S. 621, 626.
We are of opinion that the provisions of the contract have been complied with and that the plaintiff is bound by the decision made. Plaintiff claims damages for the delay caused it by making the change. Such damages cannot be recovered unless there was unreasonable delay in making the change. Magoba Construction Co. v. United States, supra. Cf. United States v. Rice and Burton, Receivers, 317 U. S. 61. Plaintiff ¿oes not claim there was an unreasonable delay in making the change, but if it had made this claim, we do not think recovery could be predicated thereon.
The plaintiff was first notified that a change was desired in the stone to be used in constructing the walls on February 26, 1937. Its proposal for doing the changed work was requested on that date. A. conference followed on March 12, 1937, at which plaintiff was directed to erect a panel of a sample wall, using a certain sort of stone, as it was required to do under the contract. About a month later, this panel not having been erected, plaintiff was again directed to do so. This was finally done on April 21, 1937. Between this date and August 8 there were a number of other panels erected, some by plaintiff and some by the defendant. On August 8 the character of wall to be erected was determined upon.
*83 It took the defendant, therefore, 3 months and 17 days to make up its mind on what it wanted. During this time there was some delay caused by plaintiff’s delay in erecting other panels, but, even so, 3 months and 17 days was quite a long time to take to decide on the change to be made, but it does not appear that plaintiff was materially damaged thereby, nor does the extent of the damage, if any, appear.
The changes in contemplation related to work above the bluestone base on the top of the foundation walls and, therefore, plaintiff was free to proceed meanwhile with the excavation, the construction of the foundation walls, and the laying of the bluestone base on the top of the foundation walls. Until all this had been done, plaintiff was not ready to proceed with the work, the changing of which was under contemplation.
Plaintiff was responsible for considerable delay in setting the bluestone base. It started excavation on April 5, 1937, and by July 5, 1937, had completed the construction of the foundation to a point where it could begin setting the blue-stone base. However, there was considerable delay in securing approval of the bluestone to be used. A sample of this stone was first submitted on March 11,1937, but was rejected as not conforming to the specifications. It was nearly two months before another sample was submitted, but this also was rejected.
Finally, about a month later, plaintiff submitted a sample which was finally approved as conforming to the specifications. Thus a little over three months elapsed before plaintiff submitted a sample of bluestone which conformed to the specifications. The shop drawings for the bluestone base course were not approved until July 2, 1937. The proof shows that it took about three weeks to fabricate the stone. Actually the first bluestone was delivered to the job on September 24, 1937. Defendant was responsible for seven days of this delay, from August 12, 1937, when it stopped fabrication of the bluestone, until August 19, 1937, when it ordered resumption; but allowing for this delay, it would not have been delivered until September 16 or 17. It took plaintiff 26 days after it was delivered on the job to set it. So that plaintiff would not have been ready to erect the walls on top of this bluestone until October 13. This was a month *84 and 22 days after tbe change order for the rubble stone was issued. It would seem that this was ample time for plaintiff to have collected its material and equipment for the construction of the walls.
It is not apparent that the change delayed plaintiff, or if so, how much.
The Under Secretar}'', however, allowed plaintiff certain expenses it claimed for a 13 weeks’ delay (plaintiff claimed 26 weeks’ delay). He did not allow all the expenses claimed. Plaintiff may or may not have incurred additional expenses during whatever delay there was, but the extent of this delay, if any, we are unable to determine from the proof.
We are of the opinion plaintiff has been fairly, if not generously, treated on this item of its claim.
Plaintiff is bound by the decision of the head of the department in assessing 4 days liquidated damages. The contract was completed 285 days late. It was held that plaintiff was not to blame for 281 of the days, but that it was to blame for 4 days. Article 9 of the contract authorizes the contracting officer to ascertain the facts and extent of the delay and to extend the time for completion, and it provides that “his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the department concerned, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto.”
Again there is no showing whatever of any arbitrary, capricious, or grossly erroneous action and, therefore, his decision is final.
Plaintiff ’s third item of claim is that it was required to use a bluestone which was more expensive than that specified in the specifications. Plaintiff submitted several samples of bluestone, as stated, but the contracting officer held that they did not comply with the specifications and rejected them, until plaintiff finally did submit a sample which was satisfactory. Whether or not the samples submitted complied with the stone specified by the specifications was a question of fact, the decision of which was committed to the contracting officer. *85 Moreover, the specifications provided that the “decision of the contracting officer or his authorized representative as to the proper interpretation of the drawings and specifications shall be final.” Under both the contract proper and the specifications the contracting officer’s decision on whether or not the sample complied with the specifications is binding on the plaintiff.
It results that plaintiff’s petition must be dismissed. It is so ordered.
Madden, Judge; and Littleton, Judge, concur.
Jones, Judge; and Whaley, Chief Justice, took no part in the decision of this case.