Davis, Judge,
delivered the opinion of the court:
In this action, general contractors claim damages said to have been caused by delay arising from defendant’s issuance of a stop order. The contract with the Navy Department *367 provided for the construction of five barracks at the United States Marine Corps Auxiliary Air Station, Beaufort, South Carolina — four 3-story 252-enlisted men’s barracks of identical design and one 1-story 86-enlisted men’s barracks. The work commenced on June 5, 1957, and was to be completed by May 31, 1958; failure to meet the stipulated completion date would subject the contractors to $400 in liquidated damages for each day of delay.
During the progress of the work, defendant foresaw a surplus of barracks spaces and began to consider certain changes which could produce savings on plaintiffs’ contract. As a consequence, on December 24,1957, before construction had proceeded beyond the second stories of the larger barracks, a stop order was issued suspending any work on the third floors. Defendant also requested deductive cost estimates in contemplation of a possible elimination of a substantial part of the work, including one entire building.[1] However, eighteen days thereafter, when it was decided that savings could not be realized, the contracting officer directed that the work be continued in accordance with the original plans and specifications.
Approximately six months after this stop order had been lifted, plaintiffs requested an extension of their completion date because performance of the contract “was restricted” during the period when the stop order was in effect. The application sought an extension of eighteen days “for the time the project was under curtailed work conditions” and an additional twenty-one days “which was necessary in which to notify our sub-contractors and suppliers and for them to reschedule production for the project.” The contracting officer promptly acceded to this request by issuing a change order briefly stating that the contract time was extended for thirty-nine days “due to a stop order, and readjustment of the work schedule beyond your control” and that “there is no change in the contract price.” The contracting officer was empowered to do this by article 5(c) of the con *368 tract which provided for the recovery of liquidated damages by the Government should the contractor fail to meet the specified completion date unless his delay was “due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor”; in that event, the contracting officer might order an extension of time, his findings of fact being binding.
Plaintiffs now seek to recover delay damages for the time during which the stop order was operative. They rest their case primarily on the contention that the Government should be bound by the “decision” of the contracting officer (when he granted them additional time) as to the extent of delay stemming from the stop order. We cannot accept this approach since our Trial Commissioner, after a full trial, has made well-supported findings which negative the existence of any actual delay or damage. The court’s prior decisions, as well as the better argument, seem to us to deny any finality or overwhelming weight to a contracting officer’s grant of additional time in a case such as this.
What the plaintiffs overlook is that when a contracting officer decides not to charge a contractor with liquidated damages for his delay different standards may be employed than those which are used by courts in determining whether or not a contract has been breached to the contractor’s injury. Here, the contracting officer made no findings of fact, but we can judge that in taking his action the considerations uppermost in his mind were probably quite dissimilar from those we must take into account in deciding whether there has been a breach, due to Government delay, causing damages to the plaintiffs. The stop order was originally imposed because there was a “then foreseeable surplus of barracks spaces, a limited expenditure ceiling, and contract savings estimated by defendant” (finding 8). It seems likely that the contracting officer would take this factor into account when the question of the imposition of liquidated damages was raised. When it became clear that the need for barracks was not so immediate as to demand the completion of the contract within the stipulated time, it doubtless seemed too harsh and rigid to enforce to the hilt the damage provisions which were intended to insure prompt performance. *369 This, together with the fact that the stop order might have caused some damaging delay, could well have determined whether the contracting officer would press for liquidated damages. On the other hand, when suit is brought for breach of contract, it is not the mere possibility of delay, but actual unreasonable delay causing damage, which is the ground of a judgment. Moreover, the need for prompt performance — dominant in the contracting officer’s mind in deciding whether to grant additional time — has no bearing on the issue before the court. The short of it is that when the Government refrains from exercising its right to collect liquidated damages, though that forbearance may tend to raise some question of Government-caused delay, it is not tantamount to admitting liability for breach of contract; there is no necessary connection.
In Langevin v. United States, 100 Ct. Cl. 15, 30 (1943), the court pointed to these and comparable considerations when it said:
The whole subject in the minds of the parties was the assessment of liquidated damages for delay; they did not have in mind suits against the Government for damages for delays it had caused. On the question of the assessment of liquidated damages the findings of the contracting officer as to the facts and the extent of delay were made final and conclusive, subject to appeal to the head of the department; but on the question of whether or not the defendant had caused a delay for which it should be mulcted in damages, they have not agreed that his findings of fact should be final and conclusive.
There is a sound reason why the parties should have been willing to agree that his findings of fact should be conclusive in one instance and not in the other. In the first it was necessary for the contracting officer to determine only that the contractor should be excused for delay; in the latter it was necessary for him to determine whether or not the defendant had breached its contract by doing something alleged to have delayed plaintiff. The defendant well might have been willing to submit to the final judgment of the contracting officer and head of the department the assessment of liquidated damages in its favor, but would not have been willing to submit to the final judgment of either of them the question of whether or not it should respond in damages.
*370 Accord, Silberblatt & Lasker, Inc. v. United States, 101 Ct. Cl. 54, 81 (1944); Fred R. Comb Co. v. United States, 100 Ct. Cl. 259, 266-67 (1943).
Later decisions have qualified the flat rule of Langevin to some degree. Tlie findings of the contracting officer have been said to constitute a strong presumption (James Stewart & Co., Inc., v. United States, 105 Ct. Cl. 284, 63 F. Supp. 653 (1946); Irwin & Leighton v. United States, 101 Ct. Cl. 455 (1944)) or an evidentiary admission (George A. Fuller Co. v. United States, 108 Ct. Cl. 70, 69 F. Supp. 409 (1947)) of the extent of the Government’s liability, but always subject to rebuttal. In Sohmoll v. United States, 105 Ct. Cl. 415, 458, 63 F. Supp. 753, 759 (1946), 'the court adopted the trial commissioner’s findings that Government-caused delay covered a shorter period of time than would be inferred from the findings of the contracting officer.[2] See also Sachs v. United States, 104 Ct. Cl. 372, 394 (1945). These cases harmonize with Langevin on the theory that, although the court is not bound to give great weight to the contracting officer’s findings in a breach of contract action, it can accept them in a proper case as some evidence which may be controlling if not rebutted.
In this case there is no reason to defer to the contracting officer’s decision to grant extra time. He made no findings and therefore we do not really know whether he considered the defendant to have caused any damaging delays at all. The Trial Commissioner’s findings, adequately supported by the evidence, dispel any inference of a damaging delay. For most of the first week that the stop order was in effect, the plaintiffs’ work crews were on Christmas vacation, a holiday planned in advance of the receipt of the stop order. After the vacation period, work crews actually did accomplish productive work; the stop order merely prevented proceeding-on work on the third floors and was not interpreted by plain *371 tiffs as an order to stop all work. See footnote 1, sufra. Two of the barracks were in the early stages of construction — - work had progressed no further than the first floors; as to these the plaintiffs failed to show any delay in the progress of their construction. While it is possible that plaintiffs could have proceeded to third floor work on the other two barracks, the record shows that productive work was nevertheless done on them during the period of the stop order and there was no sufficient showing that wTork on these barracks was in fact delayed. “The stop order did not result in the suspension of any -work underwTay” on the one 1-story 86-enlisted men’s barracks (finding 14). In his summary, the Commissioner has found that after the Christmas vacation plaintiffs “were engaged full-time on every working day in productive work on the contract project except when they could not work due to weather conditions, and except for * * * [a] 1-day shift of about one-half of plaintiffs’ work crews to a different project, under another contract.” He has found, also, that “plaintiffs have not established and the evidence as a whole does not disclose, beyond mere speculation, the damages, if any, which plaintiffs suffered as a result of the stop order.” We follow these findings of the Commissioner which are sustained by the record. Schmoll v. United States, supra; Sachs v. United States, supra.
The plaintiff says that there must have been damaging delay because the stop order necessarily interfered with the orderly progress of the work. Perhaps the stop order did cause the plaintiffs to change their plans and partially reallocate their work force; however, there is nothing in the record proving that this was so or that it was of such a serious nature as to delay the completion of the contract or to cause damages. So far as the record proves, the plaintiffs readjusted their plans as to be able to do “full-time” “productive work” on every working day except when there was bad weather (which is certainly not Government-caused delay) and the one-day shift. They have not proved that they suffered damages as a consequence of defendant’s stop order which occasioned the extension of time granted by the contracting officer.
We think it decidedly unwise to give almost-conclusive *372 weight to the contracting officer’s decision to grant extra time, for such a rule would tend to foster a policy which will ultimately work to the detriment of all contractors. In doubtful cases, contracting officers would be quite wary of granting additional time for fear that their decisions might later become the foundation for a breach of contract action. And where, as here, a trial has revealed that, in fact, the contractor suffered no damages, it would be unjust as well as unwise to allow such a decision to control the case.
The plaintiffs are not entitled to recover. Their petition is dismissed.

 By its terms, the stop order foreclosed only 'work on the third floors of the barracks. It was not intended by defendant, nor interpreted by plaintiffs, either as an order to stop all productive work or as precluding work on parts of the project which might later be eleminated by the potential change order on which the plaintiffs were asked to give cost evaluations. See findings 9,11, 20.

 In Schmoll, the court said:
We have held that in a suit for damages for breach of contract resulting from unreasonable delay caused by defendant we are not bound by the findings of the contracting officer as to the extent of the delay for which the defendant is responsible [citing Langevin v. United States, 100 Ct. Cl. 15, 31], and since we have not been convinced that the commissioner’s finding thereon is erroneous, it has been adopted by the court as a correct statement of the extent of the delay for which the defendant is responsible.