This contract case, arising under the Wunderlich Act, is to be decided on cross-motion for summary judgment.[1] Plaintiff Pathman Construction Company (Pathman) seeks Wunderlich Act review of certain aspects of two related opinions of the Postal Service Board of Contract Appeals (the Board), while defendant asks affirmance of the Board’s decisions and dismissal of the petition. For the reasons set forth below, we grant defendant’s motion, and deny plaintiffs.
The government contract underlying this action was for the performance of certain remodelling work in the Chicago Central Vehicle Maintenance Facility of the Postal Service (the Facility). The $409,900 contract was awarded to Pathman on June 21, 1974, and was to be completed by November 15, 1974 (119 days after receipt of Notice to Proceed). The work involved construction of a dispatcher’s office, remodelling offices and toilet facilities, painting, lighting and decoration. Although Pathman was not aware of this fact when it bid on the job, its contract was actually Phase II of a three-phase renovation project. The first phase of the contract, which was later awarded to another contractor, involved mechanical work on the Facility’s heating, ventilating and air-conditioning systems. The third phase entailed work on the exterior ramps, elevator installation, and changes to the Facility’s power system. The Board found, in its opinion of August 31, 1979 [79-2 BCA para. 14,027], that this out-of sequence award resulted from the Postal Service’s need to get a contract awarded quickly due to union pressure to improve the working conditions at the Facility, and that the Phase II work was awarded first because of its higher visibility. The award was made first even though the Postal Service was aware that there was a risk that later-performed Phase I work would damage previously-performed Phase II work. The board found that this out-of-sequence plan caused substantial delays and interruptions of plaintiffs work since almost all of Phase II had to wait until Phase I work (which was awarded in *672 August 1974 and which called for completion 350 days after Notice to Proceed) was performed, and that the contracting officer did not attempt to resolve these scheduling and coordination problems. The Board also found that delays in performance were attributable to the issuance of 19 contract modifications, some of which were major in scope and amount, and were administered in an uncooperative and haphazard manner. Time extensions were granted as part of the modifications, increasing the total time of performance from 119 to 936 days, and making the final completion date November 1, 1976. These modifications also increased the contract price from $409,900 to $1,199,212. Of the $789,312 added to the contract price by the modifications, only $8,978.63 comprised overhead costs. The Board found that this amount did not include extended or stretch out overhead costs, which plaintiff had reserved its right to claim at a later date. This reservation was necessary because there was no way to determine, at the time the modifications were made and the prices charged, what amount of such costs would be produced.
The current dispute arose when, after contract completion, plaintiff claimed extended overhead costs of $185,933.52, which included amounts for: main office overhead; escalation in wage fringes, insurance and taxes; field supervision and non-productive staff; other direct costs (field); extraordinary costs; and a bond premium. These costs were based on the full 717-day[2] extension period granted by the contract modifications, and were said to arise under the Suspension of Work Clause or the Changes Clause. The Board determined that plaintiff was entitled, under the Changes Clause, to an equitable adjustment including costs resulting from delay to and disruption of the unchanged contract work. However, the Board rejected Pathman’s position that the full 717-day extension period was the appropriate period on which to base such an adjustment, holding instead that "[t]o the extent that the claimed costs are time related appellant [Pathman] will have to establish the extent of claimed delays.” Board *673 Opinion at 40. In rejecting what it termed plaintiffs "total cost” theory, the Board found that
[i]n this connection, it is doubtful that every change had a delaying or disruptive effect on unchanged work. In fact the evidence strongly suggests that some of the changes, such as the truck wash rack, were isolated and nonse-quential and, therefore, would not have caused any significant delay in overall progress of the project. [Id. at 40-41.]
The Board then provided for a remand to the contracting officer to negotiate the amount of the equitable adjustment.
The second Board opinion (issued on January 17, 1980) relates to plaintiffs motion for reconsideration and clarification of the portions of the original Board decision we have quoted. The Board explained its earlier position as follows:
In our original decision we viewed Appellant’s claim for an equitable adjustment based on the 717 days of time extension granted in change orders as a "total time” approach which we rejected for reasons clearly stated on pages 40 and 41. Because the extent of delay was not specifically at issue we remanded that question, along with dollars, to the parties for negotiation.
Should the parties fail to reach agreement on the extent of delay in attempting to negotiate an equitable adjustment and should Appellant return to the Board for a quantum decision, Appellant must be prepared to offer persuasive evidence of change order impacts including specific delays associated therewith. Absent persuasive evidence that change orders delayed unchanged work to the extent of 717 days, we will not accept 717 days as the delay period. A period considerably shorter than that may well be found. [Reconsideration Opinion at 2.]
The parties do not now controvert the Board determination that "[a]n equitable adjustment for impact of modifications on unchanged work under the circumstances of this case should include costs resulting from delay to and disruption of the unchanged contract work,” Bd. Op. at 40, and it would appear that such damages are recoverable under the Changes Clause of the contract. See, e.g., Merritt-Chapman & Scott Corp. v. United States, 192 Ct. Cl. 848, 851, 429 F.2d 431, 432 (1970); Coley Properties Corp. v. United States, 219 Ct. Cl. 227, 234-35, 593 F.2d 380, 384-85 *674 (1979). The conflict arises over whether Pathman must establish the extent of the delays for any time-related costs it incurred, or whether it may simply recover its costs based on the full 717 (or 723)-day period of time extensions granted in connection with the numerous contract changes. Plaintiff strongly urges that we adopt the latter position on the ground that the bilateral contract modifications represented accords and satisfactions fixing the period for performance and the extent of delay for unpaid costs reserved in the modifications, thus obviating the need for independently establishing the length of time for which Such unpaid stretch out and extended overhead costs should be paid. As we have said, the Board rejected this view and the plaintiff filed the present suit in our court.[3]
Regardless of whether or not the time period plaintiff wishes to use is based on a "total time” approach (plaintiff argues vehemently that it is not), we agree with the Board that the full extended performance period does not automatically become the time upon which delay costs, such as extended overhead and stretch out costs impacting on unchanged work, are to be computed.
The contract modifications are not binding on the parties and are not accords and satisfactions on the issue of delay-related damages to unchanged work. Pathman
specifically reserved from the significant modifications its rights to present such claims. Such reservations effectively preserved appellant’s rights and precluded any perception of those modifications as being accords and satisfactions of these claims. [Bd. Op. at 40.]
This reservation of claims (which the contracting officer was aware of) was necessitated by the fact that at the time of agreement on the price and time for the significant contract modifications appellant had no way of accurately estimating or documenting the actual impacting of concom *675 itant claims for delay and stretch out costs on unchanged work. Bd. Op. at 39. It is thus clear that the time extensions did not go to the extent of delay which each modification actually caused to unchanged work. There is no reopening of the modifications to determine time. Rather, time (for this purpose) has always been open, i.e., it was outside the scope of the modifications and the incidental time extensions.
That is not to say that the time extensions served no purpose. For instance, they were binding on the issue of non-assessment of liquidated damages. That was probably the primary purpose for granting the time extensions. But the fact that the contracting officer agreed to these time extensions for that particular purpose does not mean that he or she meant to concede actual delay for the purposes of damages or an equitable adjustment. See Langevin v. United States, 100 Ct. Cl. 15, 30 (1943), in which we stated that "[t]he whole subject in the minds of the parties was the assessment of liquidated damages for delay; they did not have in mind suits against the Government for damages for delays it had caused.”
In Robert E. Lee & Co. v. United States, 164 Ct. Cl. 365 (1964), we were faced with a situation closely analogous to the instant one, and we reached a result consistent with our and the Board’s holding here. In Lee, the plaintiffs sought and were granted a time extension by the contracting officer "due to a stop order, and readjustment of the work schedule beyond your control * * *." Id. at 367. The plaintiffs later brought a breach of contract suit seeking delay damages for the time during which the stop order was operative, arguing that "the Government should be bound by the ’decision’ of the contracting officer (when he granted them additional time) as to the extent of delay stemming from the stop order.” Id. at 368. The court rejected that position since the trial judge had found there was no actual delay or damage. Id. We went on to state that when a contracting officer decides not to charge a contractor with liquidated damages for his delay different standards may be employed than those which are used when the issue is whether delay-caused damages occurred. While in the former situation a possibility of delay (combined with other *676 factors such as the degree of urgency present) could support a liquidated damages-motivated time extension, in the latter "a mere possibility of delay” is not sufficient to support a monetary award. Id. at 369:
The short of it is that when the Government refrains from exercising its right to collect liquidated damages [by granting a time extension], though that forbearance may tend to raise some question of Government-caused delay, it is not tantamount to admitting liability for breach of contract; there is no necessary connection. [Id.]
See also, Schmoll v. United States, 105 Ct. Cl. 415, 458, 63 F. Supp. 753, 759, cert. denied, 329 U.S. 724 (1946); J.D. Hedin Constr. Co. v. United States, 171 Ct. Cl. 70, 83-84, 347 F.2d 235, 245 (1965).
The reasoning of these decisions is applicable to the present case, even though the underlying action in Lee and similar rulings was a delay-based breach of contract suit rather than an equitable adjustment claim under a contract Changes Clause. The very same considerations govern both types of proceedings.[4]
In addition, Pathman requests us to review and correct the Board’s holdings on two other minor issues. The first involves a $3,855 claim on behalf of plaintiffs painting subcontractor, Bobbe & Company. This consists of: (1) alleged wage increases resulting from the performance of contract work after the original completion date; and (2) the costs of covering Postal Service trucks with protective materials to prevent damage to them, a cost which Bobbe allegedly incurred because the Postal Service failed to remove the trucks from the work area. The Board found that the evidence presented by Pathman to support this claim consisted "simply of claim letters and uncorroborated hearsay [of Mr. Pathman]”, and moreover that defendant *677 was not given notice until nearly two years after Bobbe informed plaintiff of its claim — a delay the Board found to be unjustified. Bd. Op. at 41. It held that in these circumstances, a prima facie case for recovery was not established and therefore plaintiffs claim must fail. Id.
The Board is in the best position to consider the credibility of testimony, Koppers Co. v. United States, 186 Ct. Cl. 142, 149 n.7, 405 F.2d 554, 558 n.7 (1968), and where, as in the instant case, the evidence supporting plaintiffs claim is hearsay supported by self-serving letters, we do not find the Board’s denial to be arbitrary, capricious or so grossly erroneous as to imply bad faith, or unsupported by substantial evidence. That is the test, not whether we agree with the Board’s decision or feel that it is necessarily correct. Additional support for the Board’s position can be found in the substantial delay in filing the claim with the Postal Service.
Pathman’s other lesser claim concerns whether its costs in preparing a survey and engineering report in May 1975 constituted compensable extra work. While the Board rejected defendant’s position that the work was required to have been done by plaintiff as part of its site investigation before a contract bid was made, it found that on the evidence Pathman had failed to meet its burden of proving it was entitled to payment on the claim. Bd. Op. at 41-42. This was based on the fact that "many of the items covered in the report simply reflect problems which an experienced contractor such as appellant could have expected to encounter in performance of a rehabilitation contract [since] [s]uch contracts are noted for entailing much difficulty in performance.” Id. at 42. This judgment seems to us to be reasonable and not inconsistent with evidence given by plaintiffs vice-president, Mr. Robert Buckman. Mr. Buck-man testified that the report was prepared at the initiative of Pathman, as a result of questions arising during the course of performance. The report dealt primarily with interference and coordination problems between the three phases of construction. There does not appear to have been any testimony by Mr. Buckman or other persons that the report was to have been paid for by the Postal Service. Pathman’s reliance on the Buckman testimony is thus *678 unavailing since it was not responsive to the question of cost, and does not address the basis of the Board’s decision — i.e., that Pathxnan did not prove that the survey and report were compensable extra work since they dealt with problems which an experienced contractor would have expected to encounter in this type of project. Bd. Op. at 42. Nor are we persuaded by the allegations that the Government received, without additional cost, some incidental benefit to all three stages of the project, or that the Postal Service staff knew Pathman was preparing the report and survey. These facts are irrelevant; the Board permissibly found the problems covered in the report and survey to be of the type that could reasonably be anticipated in this kind of contract.
Accordingly, the defendant’s motion for summary judgment is granted, the plaintiffs motion is denied, and the petition is dismissed. The parties should continue with the further proceedings directed by the Board.
IT IS SO ORDERED.

 We do not consider oral argument necessary.

 Pathman claims that this 717-day figure is incorrect due to an error in mathematics, and should be 723 days instead. We leave this issue to be decided by the Board or the parties.

 Defendant argues that this claim is not yet ripe for judicial review since Pathman has not yet fully exhausted its administrative remedies. This contention rests on the fact that since "the extent of delay was not specifically at issue [the Board] remanded that question, along with dollars, to the parties for negotiation,” and provided that, if an agreement was not reached, the plaintiff could return to the Board for a quantum decision. We reject the Government’s position of prematurity because, if plaintiff is correct in its legal point, there is no need for further burdensome factual determinations by the contracting officer and the Board. The legal problem is ready for judicial resolution at this time.

 Nor are we persuaded by Pathman’s argument that, in effect, all delay costs are time-related. Assuming this is true, that fact does not militate against the Board’s position that plaintiff must establish the extent and effect of delays. Neither this, nor any of plaintiff’s arguments on this issue, logically requires blind acceptance of the 717 day period as the actual duration of damaging government-caused delay. We think, however, that the Board (if the case returns to it) should take account of this court’s statement in Robert E. Lee, supra, 164 Ct. Cl. at 370, that, "although the court is not bound to give great weight to the contracting officer’s [time] findings [in the contract modifications] in a breach of contract action, it can accept them in a proper case as some evidence which may be controlling if not rebutted.”