## FIREMAN'S FUND INDEMNITY CO. v. UNITED STATES.

### No. 44890.

Court of Claims.

Nov. 5, 1945.

Bernard J. Gallagher, of Washington, D. C. (Louis Rosenberg, Herbert M. Rosenberg, and Irving H. Rosenberg, all of New York City, on the brief), for plaintiff.

Gaines V. Palmes, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON and WHITAKER, Judges.

LITTLETON, Judge.

The items making up plaintiff's claim of $15,213.04, which it insists the defendant illegally charged and withheld, are set forth in finding 7.

The C. & W. Construction Company and the defendant entered into a contract March 27, 1934, for the construction by the C. & W. Co., of twenty-three buildings, including certain utilities, for Army Officers' Quarters at Aberdeen, Md., for $476,900. Plaintiff was surety on the contractor's performance bond. The contract period for completion began on March 31, 1934, and ended September 8, 1935. The original contractor abandoned the work and defaulted on the contract February 8, 1935, without fault on the part of the defendant. The plaintiff, as surety, was so notified February 8 and 21, 1935, and it advised defendant that it would take appropriate action upon being advised that the contractor had been declared in default. It

was so advised February 23. Thereupon, plaintiff agreed and undertook through a subcontract with the Wilaka Construction Company to complete the unfinished contract work. It was unable to do so within the remaining contract time, and the various buildings, except building No. 9, were not completed and accepted until the dates stated in finding 28. Building No. 9 was not completed and accepted until March 20, 1936.

The items in issue grow out of the following matters:

The defendant required plaintiff to replace, at its own cost, certain concrete floors constructed by the prime contractor which had been damaged by water freezing under them, which damage defendant held had been due to the fault of the original contractor; defendant also denied plaintiff's claim for compensation for this work and its request for a 30-day extension of time on account thereof; and, also, plaintiff's claim for furnishing temporary heat after December 31, 1935. In addition to this defendant charged against plaintiff and deducted from the amount otherwise due it under the contract certain sums representing (1) rental allowances, in lieu of quarters, paid to certain Army officers because of delayed completion of the buildings intended for their use, (2) certain costs paid out by defendant for its supervisory force of employees at the site after September 8, 1936 (the completion date), and (3) $901.18, income tax due by the prime contractor for 1933.

Plaintiff filed claims with defendant on the grounds on which this suit is based and, in this action, seeks to recover the entire cost of $5,059.61 for replacing the concrete floors; the amount of $1,523.68 for temporary heat after December 31, 1935; all the charges of $3,624 for rental allowances after September 8, 1935; the amount of $1,488.21, civilian salaries and supervisory costs to defendant for thirty days, between September 8 and October 8, 1935; improper charges for civilian salaries and supervisory costs of $2,616.36 for January, February, and to March 20, 1936 (on the ground that building No. 9 should have been accepted December 31, 1935), and the entire tax deduction of $901.18. All of plaintiff's claims, except that relating to the tax deduction of $901.18, were considered and denied under Art. 15 of the contract by the Constructing Quartermaster, the Quartermaster General, and the head of

the Department. Plaintiff claims that these findings and decisions were arbitrary and capricious, and in clear violation of the contract.

### Item 1, Replacing Concrete Floors.

■ The facts established by the greater weight of evidence concerning the claim for $5,059.61, and thirty days' additional time, are set forth in findings 9 to 25, inclusive. Plaintiff claims that these concrete floors were damaged by water getting under them and freezing, because of the failure of defendant to perform its duty of having a general drainage system installed so that the subsoil drains and down spouts to be installed under the contract in suit could have been connected therewith before the cold weather in January and February, 1935. In addition to the fact that there was no express or implied provision in the contract in suit that defendant would have the general drainage system installed at any particular time, the evidence satisfactorily shows and the contracting officer found and decided that the damage to the floors was not caused by lack of a general drainage system, but by the failure of the original contractor, the C. & W. Company, to timely and properly backfill around the buildings. The decisions made under Art. 15 of the contract cannot, on the evidence submitted, be upset.

■ This conclusion also disposes of that portion of plaintiff's claim for return of $1,488.21, deducted as excess costs occasioned by delay in completion, and representing salaries paid to defendant's supervisory staff and the Construction Quartermaster for the period September 8 to October 8, 1935, for which it is claimed an extension should have been granted on account of the extra concrete work. Moreover, the evidence does not satisfactorily show that the work of replacing the damaged floors necessarily operated to delay completion of the other original contract work.

Plaintiff is not entitled to recover on the items mentioned, totaling $6,547.82.

### Item 2, Deduction of Rental Allowances Paid to Army Officers.

■ This item of the claim represents the amount of $3,624 paid by defendant (finding 40) to certain Army officers as rental allowances in lieu of quarters between September 8, 1935, the contract completion date, and the dates on which the several buildings were completed, accepted, and occupied by officers of the Army for whose use they were being constructed. Defendant charged plaintiff with this amount as a part of the "excess cost occasioned to the Government," within the meaning of Art. 9 of the contract, by reason of default of the original contractor and failure of plaintiff to complete its work on time (see findings 26 to 39, incl.).

It cannot be denied that this was an excess cost occasioned to the Government by reason of the conditions mentioned for if the buildings had been completed by September 8 this cost would not have been incurred. Plaintiff argues, however, that rental allowances are special damages not within the contemplation of the contract and that Art. 9 of the contract contemplated only general damages, such as any excess construction costs and excess supervisory costs and expenses directly connected with performance of the work. We cannot agree with plaintiff's argument, and this court has held to the contrary in John M. Whelan & Sons, Inc., v. United States, 98 Ct.Cl. 601; Collins, Receiver, v. United States, 93 Ct.Cl. 369; Modern Industrial Bank v. United States, 101 Ct.Cl. 808, 821, 822. See, also, American Surety Company v. United States, 9 Cir., 136 F.2d 437, 439, and United States v. American Surety Company, 322 U.S. 96, 64 S.Ct. 866, 88 L.Ed. 1158.

The first part of Art. 9 stipulates liquidated damages in lieu of all excess costs or actual damages occasioned to the Government for delay, and the last part of such article stipulates, in effect, that, in the event of the default of the contractor and the completion of the work by the Government by contract or otherwise, the Government shall be entitled to recover all actual damages proximately and directly attributable to such default and delay in completion measured, as the contract says, by "any excess cost occasioned to the Government thereby."

■ It will be seen that when default and delay occur this provision does not limit the damages recoverable by the Government to excess construction and direct supervisory costs over the contract price, but to any excess cost occasioned thereby. This, of necessity, includes any item of cost occasioned to the Government as a result of the default or delay which would not otherwise have been incurred under

the particular contract had there been no default or delay.

We think the contract contemplated such costs as are in controversy under this item. These costs were in effect rent. They were paid to these officers in order that they might rent quarters because these buildings were not completed so that they might occupy them, and the contracting officer so held; such costs were, therefore, the natural and proximate consequence of the breach of the contract by the prime contractor and plaintiff.

Plaintiff is not entitled to recover on this item.

Item 3, Temporary Heat and Supervisory Salaries and Costs Between December 31, 1935, and March 20, 1936.

■ This item of the claim amounting to $4,140.04, represents the cost to plaintiff of $1,523.68 for temporary heat in building No. 9 after December 31, 1935 (findings 41 to 43), and $2,616.36 deducted by defendant for salaries and expenses of the Construction Quartermaster and the civilian supervisory staff for January, February, and to March 20, 1936 (findings 35 to 37).

The evidence does not establish that building No. 9 was in such state of completion as to be satisfactory for acceptance on December 31, 1935, for the purposes for which it was intended or at any date thereafter until it was accepted as satisfactorily completed on March 20, 1936. The facts show that the decisions of the Constructing Quartermaster and the Quartermaster General, from which plaintiff took no appeal, were reasonable and were not arbitrary. Cf. Austin Engineering Co., Inc., v. United States, 97 Ct.Cl. 68, 72, 79.

Plaintiff is therefore not entitled to recover on this item of its claim.

Item 4, Deduction of Tax Due by Original Contractor.

■ Upon final settlement with plaintiff the Comptroller General found that the C. & W. Co., the defaulting prime contractor, was indebted to the Government to the extent of $901.18 for income tax and interest for 1933, and he deducted this amount from the balance otherwise due plaintiff under the terms of the original contract (findings 44 to 47). The charging of this tax to plaintiff and the deduction of it

from the amount due plaintiff, as surety on the bond for completion of the contract work, were improper. United States Fidelity & Guaranty Co. v. United States, 92 Ct.Cl. 144, 153. Plaintiff is therefore entitled to recover this amount.

Judgment is entered in favor of plaintiff for nine hundred and one dollars, and eighteen cents ($901.18).

It is so ordered.

MADDEN and JONES, Judges, took no part in the decision of this case.