## SCHMOLL et al. v. UNITED STATES.

Nos. 44761–44770, 44999.

Court of Claims.

Jan. 7, 1946.

Bernard J. Gallagher, of Washington, D. C. (M. Walton Hendry, of Washington, D. C., on the briefs), for plaintiffs.

James J. Sweeney, of Washington, D. C., Rawlings Ragland, Acting Head, Claims Division, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and JONES, Judges.

WHITAKER, Judge.

Between November 19, 1933, and March 19, 1935, Murch Brothers Construction Company, Inc., entered into 27 contracts with the United States, 17 of which were for the construction or remodeling of post offices in various cities. On each of them plaintiff, National Surety Corporation, was surety on the payment bond guaranteeing payment for all labor and material used in the performance of the contracts.

In June, 1935, the Murch Company found itself unable to complete the contracts on account of lack of funds and, in consequence, it suspended work thereon on June 22, 1935. Defendant terminated its right to proceed on June 27, 1935, and let contracts to others for the completion of the buildings.

On January 3, 1936, the Murch Company made an assignment for the benefit of its creditors. Plaintiff Dewey Schmoll is the present assignee under that assignment.

On eleven of the contracts the total amount defendant agreed to pay Murch Company is $60,100.67 more than defend-ant has paid it and completing contractors. On the remaining six contracts defendant has paid $4,903.10 more than the contract price. This leaves a balance of $55,197.57. Defendant, however, incurred certain expenses incident to the Murch Company's default. It now claims that these expenses amounted to $31,547.80, and that it has the right to deduct this amount from the balance in its hands. (The Comptroller General deducted the sum of $32,692.56, which included rentals paid for temporary quarters after the buildings had been completed, but defendant now admits this was improper. This amount was $1,144.76.) Plaintiffs admit defendant's right to deduct all of this amount except $12,795.27, which is the amount of rental paid for temporary quarters for post offices between the completion dates under the Murch contracts and the actual dates of completion. This is the first item in dispute.

Defendant also claims the right to offset against the balance due on these contracts the sum of $2,552.43, an amount it claims the Murch Company owes it for correcting defective work on two contracts for the Veterans' Administration, and the sum of $206.53, an amount the Murch Company owes for taxes. On these Veterans' Administration contracts plaintiff, National Surety Corporation, was not surety and, having paid for labor and material on these contracts a total of $202,011.66, which far exceeds the amount due on the Murch contracts, it denies defendant's right to offset against it the amounts due on these contracts and the amount due for taxes. This is the second matter in dispute.

The third item is a sum alleged to be due for delays alleged to have been caused by defendant on the Schenectady contract.

■ 1. Plaintiffs say defendant is not entitled to deduct the amount paid for rental of temporary quarters for post offices because the contract makes the contractor and his surety liable only for the excess costs of completion of the contract, in case the contractor's right to proceed is terminated, and that rental of temporary quarters is not a cost of completion.

We agree that such an item is not a part of the cost of completion of the contracts, and that it may be recovered, if at all, only as damages, and not as a part of the cost of completion. We did not hold otherwise in Collins, Receiver, v.

United States, 93 Ct.Cl. 369. In that case such an item was allowed, but no issue was raised nor discussed about the propriety of its allowance.

Plaintiffs further say defendant is not entitled to this deduction as an item of damage for delay in completion, because, first, damages for delay are neither alleged nor proved, and, second, the amount defendant paid for temporary quarters is not the proper measure of damages.

Defendant in its counterclaim did not seek to recover damages, but only excess costs of completion, and it did not specify any of the items of excess cost, including the cost of temporary quarters; but in its proof it did seek to recover this item, although not as damages for delay, but as an item of excess cost of completion. Counsel for plaintiffs admitted the amount had been spent for this purpose and that it was reasonable, but he said that it was "a question of law as to whether or not the Government is entitled to deduct them."

■ Aside from the question of pleading, we are of opinion that defendant is entitled to deduct the amount of money it lost in rentals on account of the delay. Where the Government terminates the contractor's right to proceed, liquidated damages are not deductible,[1] but we have held that actual damages are,[2] and so also has the 9th Circuit Court of Appeals.[3] What it has lost in rental is an element of damage.

■ Plaintiffs are correct in saying that ordinarily the proper measure of damages is the reasonable rental value of the building on which construction was delayed; but in the case of a building that has no rental value on the market, such as a post office, we must arrive at defendant's loss in some other way. We have no doubt that it lost not less than the amount it paid for temporary quarters, because we are sure if it had rented quarters comparable to those under construction it would have had to pay much more than it did. It is common knowledge that ordinarily the post offices built by the Government are costlier to construct than those it rents temporarily, and that if it rented quarters comparable to those it builds it would have to pay a much larger rental. Unless defendant is barred from doing so by defective pleadings, we are of opinion it is entitled to deduct the rent paid.

■ When defendant offered this proof of rent paid, plaintiffs did not object to it as being outside of the counterclaim; they admitted the amount had been spent for the purpose claimed and that it was reasonable. Not until their brief was filed did the defendant know they were objecting to this item because the defendant had called it "excess cost" instead of "damages." Since plaintiffs were fully apprized of the Government's claim and its nature in ample time to combat it, we do not think that the fact that the Government called it by the wrong name should deprive it of the deduction.

2. The next matter at issue is the defendant's right to offset against the amount due plaintiffs the sums which the Murch Company owed it on other contracts on which the plaintiff, National Surety Corporation, was not surety, and also the amount which the Murch Company owed defendant for taxes.

In the case of Maryland Casualty Company v. United States, 100 Ct.Cl. 513, we held that defendant was not entitled to these offsets; but the facts in that case differed from the facts in this, in that there was no formal act of insolvency in that case, whereas in this the Murch Company had made an assignment for the benefit of its creditors. The defendant says that this differentiates this case from the Maryland Casualty case, because of the provisions of section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, giving to the United States priority where one indebted to it becomes insolvent.

■ In our opinion in the Maryland Casualty Company case we stated this section did not apply except in case of a formal insolvency and, although we did not decide the question, we intimated that

[1] United States v. American Surety Co., 322 U.S. 96, 64 S.Ct. 866, 88 L.Ed. 1158.

[2] John M. Whelan & Sons, Inc., v. United States, 98 Ct.Cl. 601; Modern Industrial Bank v. United States, 101 Ct. Cl. 808, 821; Cf. National Surety Corp. v. United States, 102 Ct.Cl. 671, 690; Fireman's Fund Indemnity Co. v. United States, Ct.Cl. 63 F.Supp. 750.

[3] American Surety Co. v. United States, 136 F.2d 437.

where the insolvency is formal the United States would have priority over a surety on a payment bond. We now hold that it does have; but we expressly limit our holding to a surety on a payment bond. Whether the same ruling would apply to a surety on a performance bond, we do not decide.[4]

In the case of United States v. National Surety Company, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143, a surety, who had paid the Government in part for its principal's default, claimed that under section 3468 of the Revised Statutes, 31 U.S.C.A. § 193, it was entitled to share in the bankrupt's assets equally with the Government on the balance of its claim. Section 3468 gives to a surety who has discharged its principal's obligation to the Government "the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States * * *." The surety claimed that under this section it was entitled to equality with the United States in the distribution of the assets of the insolvent.

The court said [254 U.S. 73, 41 S.Ct. 30]: "* * * To accord such equality would abridge the priority expressly conferred upon the government. While the priority given the surety by the statute attaches as soon as the obligation upon the bond is discharged, it cannot ripen into enjoyment unless or until the whole debt due the United States is satisfied." The court went on to say that this rule was in harmony with the rule that a surety did not become subrogated to the collateral or remedies reserved to the creditor until the creditor's full debt was discharged.

Section 3466 gives to the United States priority over every unsecured[5] creditor in the assets of an insolvent. If the surety, upon satisfaction of the amount its principal owes the defendant, is thereupon entitled to share in the assets of the insolvent equally with the United States, to whom the insolvent is otherwise indebted, then, of necessity, the Government no longer has the priority over all unsecured creditors which is given it by section 3466; thereafter it has priority over everyone except the surety; with it, it has only equality.

We do not mean to say that a surety, upon payment of its principal's debt, may not acquire a right superior to the right of the United States in any fund held to secure performance of that obligation of the principal which the surety discharges; but we are not confronted with this situation here. A part of the moneys due plaintiff Schmoll in this case is the amount withheld from the Murch Company under article 16 of the contract, to secure its performance, but this sum is not also withheld to insure payment of laborers and materialmen. Cf. Maryland Casualty Co. v. United States, supra. If the contractor fails or refuses to pay its laborers and materialmen, the Government is not liable therefor, and it is not obligated or authorized to use the retained amounts to pay them. Therefore, the surety, upon payment of them, acquires no equitable lien on the retained amount, since it was not retained to secure performance of the obligation the surety discharges.

Under such circumstances the surety can hardly complain of the defendant's insistence upon the priority given it by Revised Statutes, § 3466. When the surety on the payment bond entered into its contract of suretyship it did so with the understanding that if it discharged its principal's obligation it would be entitled to its principal's rights against the United States, but, when it did so, it had knowledge, constructive or otherwise, of this section 3466 which gave the United States priority; and the agreement of the United States that the surety should become subrogated to its principal's rights against it must be understood to have been made subject to the limitation that the Government should nevertheless have the priority given it by this statute.

We hold that defendant has the right to offset against the surety's demand the amount due by the Murch Company

---

[4] In United States Fidelity & Guaranty Co. v. United States, 92 Ct.Cl. 144, 150, we held that the right of the surety in such a fund was superior to that of the United States, but we did not consider in that case the effect of sec. 3466 of Revised Statutes. Whether that section would change the result, we do not decide.

[5] United States v. Guaranty Trust Co. of New York et al., 8 Cir., 33 F.2d 533; Id., 280 U.S. 478, 50 S.Ct. 212, 74 L. Ed. 556; United States v. Waddill Holland & Flinn, 323 U.S. 353, 65 S.Ct. 304.

on account of the Veterans' Administration contracts and for taxes. It is, of course, entitled to offset them against the claim of the assignee of the Murch Company.

3. Plaintiffs allege that the Murch Company was greatly delayed by defendant in the performance of its contract for the addition to and the remodeling of the post office at Schenectady, and that it is entitled to recover its damages for these delays.

The commissioner has found that the defendant was responsible for total delays to the contractor of 209 days, 90 days of which were due to errors in the original plans and the correction of them, 57 days of which were due to delay in furnishing models for stone work, and 62 days of which were due to delays in furnishing full-size drawings for the millwork.

Plaintiffs have taken exception to the commissioner's failure to find that the defendant was responsible for additional delays, and the defendant excepts to these findings of the commissioner as a whole; but neither party has complied with the requirements of our rules relative to exceptions to a commissioner's report. Rule 46, relative to exceptions to a commissioner's report, provides that, "Each exception, at the end thereof, shall have appropriate references to the parts of the record relied upon for its support." See also rules 76 and 78 containing a similar requirement where the plaintiff, in a case that has not been submitted to a commissioner, requests findings of fact, and the defendant objects thereto.

Plaintiffs take exception to the commissioner's findings numbered 48, 52, 53, and 54, but they have failed to comply with the rule requiring them to refer to the parts of the record relied upon in support of their exceptions.

Defendant excepts to the commissioner's findings in toto, and asks the court to adopt in lieu thereof its proposed findings on the question of delay. It does not except to each separate finding of the commissioner and, therefore, of course does not refer the court to the portions of the record upon which it relies to show that the finding is incorrect.

The parties having wholly failed to comply with the rules with respect to exceptions to a commissioner's findings, their exceptions are overruled, and the commissioner's findings on the question of delays are adopted, in substance, as the findings of the court.

However, notwithstanding the failure of the parties to comply with the rules, the court has made sufficient examination of the record to satisfy itself that the commissioner has found the facts correctly.

The first period of delay is one of 90 days incident to errors in the original plans and the correction of them. The contracting officer found that there had been a delay of 90 days due to this cause and he extended the time accordingly. The commissioner concurs in his finding. However, we have allowed no damages for this delay since the contractor has already been paid what it claimed therefor, with the exception of what it claimed on account of temporary heat.

After the plans had been corrected the contractor was asked to submit a proposal for the work according to the altered plans. In submitting its proposal the contractor called attention to the fact that it had included the sum of $800 for the expense of its superintendent and office assistant who had been compelled to remain on the job during the period of the delay. This item was allowed by the defendant. The only other item claimed by the contractor on account of this delay was the sum of $500 for temporary heat. We have allowed plaintiffs $1,514.80 for temporary heat incident to the delays due to the tardy furnishing of models and full-size drawings for the millwork. These delays carried the work over into the winter of 1934–1935, necessitating temporary heat. The additional delay of 90 days did not make necessary any additional temporary heat, and plaintiffs are not entitled to any additional allowance therefor.

Plaintiffs, therefore, have been fully compensated for all damages suffered on account of this 90 days' delay.

The second period of delay is one of 57 days. The contractor was ready for the stone work for which models were to be supplied by the defendant on September 5, 1934, but on account of defendant's delay in furnishing these models the stone fabricated from them was not received on the job until November 1. The commissioner has found that this delay of 57 days was caused solely by defendant and that it delayed the entire job an equal length of time. The contracting officer and head of the department made similar findings.

The third period of delay is one of 62 days. The contracting officer found that the contractor had been delayed a total of 134 days by defendant's failure to furnish on time full-sized drawings for the millwork; the commissioner, however, finds that the only substantial delay to the job as a whole on account of the failure to furnish full-sized drawings for the millwork was that connected with the millwork for the postal screen. The Murch Company was ready to erect this screen about the middle of February 1935, but on account of the delay in furnishing the drawings the millwork for it was not received until April 17, 1935. The commissioner finds that the delay amounted to 62 days, and that it delayed final completion of the building for this length of time.

We have held that in a suit for damages for breach of contract resulting from unreasonable delay caused by defendant we are not bound by the findings of the contracting officer as to the extent of the delay for which the defendant is responsible,[6] and since we have not been convinced that the commissioner's finding thereon is erroneous, it has been adopted by the court as a correct statement of the extent of the delay for which the defendant is responsible.

Plaintiffs are entitled to recover from the defendant the sum of $9,124.77 on account of the delays incident to the performance of the contract at Schenectady, N. Y., as itemized in finding 57. They are also entitled to recover $20,890.81, the excess of the sums agreed to be paid on certain contracts over and above the sum of the excess cost of the performance of others, and the expenses incident to the contractor's default, and the cost of correcting the defective work on the Veterans' Administration contracts and the amount due by the Murch Company as taxes.

The plaintiff, National Surety Corporation, having paid the total amount of $202,011.66 for labor and material for which the Murch Company was liable, and this sum exceeding the amount plaintiffs are entitled to recover in these cases, judgment will be entered against the defendant and in favor of the National Surety Corporation for the amount of $30,015.58, and the petitions of Dewey Schmoll, successor assignee for the benefit of creditors of Murch Brothers Construction Company, Inc., will be dismissed.

It is so ordered.

MADDEN, Judge, took no part in the decision of this case.

---

[6] Langevin v. United States, 100 Ct.Cl. 15, 31.