Whitaker, Judge,
delivered the opinion of the court:
Plaintiffs,, a partnership composed of Holland Page and Sherman Nelson, sue to recover $210,620.12, the amount to which they say they are entitled under, and because of a breach of their contract for the clearing of certain acreage in the Norfork Eeservoir area in northern Arkansas and southern Missouri.
Bids were invited for clearing six different areas, designated areas 2, 3,4,5, 6 and 7, both separately and as a whole. These areas were within the area of the reservoir to be created by the erection of a dam on the North Fork Biver. One of the plaintiffs, Sherman Nelson, bid on all six parcels and he was low on each of. them, except one, and his bid on the whole was also low. However, the Army Engineer Corps, representing the defendant, hesitated to let a contract to Nelson *53 for the entire work because of Ms limited experience and his-lack of capital and eqtiipment. Nelson then brought Holland Page to the Engineer’s office and Page agreed that he and Nelson, as partners, would take a contract to clear three of the six parcels. Parcels 2, 3 and 7 were allotted to them, and the other three parcels were allotted to the Schutt Construction Company;
■ Plaintiffs’ petition is grounded on five complaints: (1) that parcel 7 was eliminated from their contract; (2)- that they cleared more land than they were paid for; (3) that 48.03 acres were erroneously taken from one of the tracts they were-to clear and put in one of the tracts to be cleared by the Schutt Construction Company; (4) that they were erroneously charged with inspection costs; and (5) that they have not been paid the sum of $100.00 retained by defendant and admittedly due them.
> All of these issues, except the last, have been decided against plaintiffs by the contracting officer and the head of the department, and plaintiffs admit that these decisions, except- that relating to inspection fees, would be conclusive except for the fact that they say they were arbitrary and capricious and rendered in actual bad faith. /
■ The trial commissioner has found against plaintiffs. Plaintiffs have excepted to each of his findings, except' three formal ones. We have examined their exceptions and the evidence on which they are based, and conclude they are not well taken.
defendant filed no exceptions.
■1. ■ Plaintiffs’ first complaint is that parcel 7 was deleted from their contract. Plaintiffs consented to tMs, but they say they did so under duress. We do not think so.
" Plaintiffs were far behind with their progress schedule' and they were getting further and further behind. The areas had to be cleared before the dam could be closed and the reservoir filled up, and it was apparent that parcel 7 would not be cleared in time. Plaintiffs, being 31 days behind their schedule on January 1,1943, reorganized their working force and put a new superintendent in charge. This superintendent'wrote'.tlie resident engineer outlining his plan for catching up. The resident engineer sent plaintiff’s letter to-tiré *54 District Engineer and suggested himself three alternatives for correction of the situation. One of these alternatives was the elimination of parcel 7 from plaintiffs’ contract. The District Engineer gave serious consideration to this suggestion, but decided not to make this demand on plaintiffs until they could have further opportunity to catch up.
However, plaintiffs got further and further behind. By April 29 they were 68 days behind schedule. At that, .time the defendant proposed to Page over the phone that this parcel be eliminated from the contract. Page promised to come to the Engineer’s office in Little Bock to discuss the matter, but failed to keep a number of appointments. He finally appeared, however, on May 13, but stated that he wanted further time to consider the matter. Pie continued to defer giving defendant an answer to this suggestion; whereupon, defendant advised him that it would exercise its rights under article 9 of the contract and terminate plaintiffs’ right to proceed with parcel 7. Thereupon Page advised defendant that he would agree to the deletion of this parcel from the contract. He, however, refused to sign the release prepared by defendant, but gave defendant a letter in which he said '“yo,u may delete Parcel No. 7 from my contract.”
The following day, the Schutt Construction Company agreed to do the work on parcel 7 for the amount for which plaintiffs had offered to do the work. However, defendant did not wish to enter into a formal contract with Schutt therefor until plaintiffs had signed an agreement to delete this parcel 7 from the contract and to release the defendant from any liability in connection therewith. Plaintiffs refused to do this. Whereupon, defendant told plaintiffs that they would then exercise their rights under article 9 and terminate their right to proceed with this parcel. Plaintiffs then signed the release.
Defendant’s threat to exercise its rights under article 9 did not constitute duress, since it was a threat to do something which the contract gave it the right to do.
While the defendant was negotiating with plaintiffs to sign. this release a progress payment became due. A voucher was prepared on the assumption that plaintiffs would agree to the deletion of parcel 7 from their contract. However, :this: *55 voucher was not delivered because of plaintiffs’ delay in making the agreement requested.
When plaintiffs complained about the nonpayment of the progress payment, another voucher was prepared including parcel 7 in the contract work. By the time this revised estimate was returned to the field office it was time for the next estimate to be prepared. By this time plaintiffs had signed the release. Whereupon a new estimate was prepared including two semi-monthly periods, and this was paid. Plaintiffs say that defendant refused to pay plaintiffs their semimonthly estimate in order to force them to sign the release, but we are convinced that this is not so.
2. Plaintiffs claim that they cleared more acreage than they have been paid for. The contracting officer has decided this issue against plaintiffs, and his decision was neither arbitrary nor capricious nor in bad faith.
Field surveys are classified according to the accuracy with which they are made. In a first order survey the error is not expected to exceed one in 25,000. In a second order survey the error should not exceed one in 10,000, and in a third order survey it should not exceed one in 5,000. In determining acreage of large areas third order surveys are considered sufficiently accurate. The field survey on the upper and lower limits of parcel 3 and on the upper limit of parcel 2 was within third order requirements. The survey on the lower limits of parcel 2 did not quite meet third order requirements, but it was close to it.
Irregular tracts of land, such as were involved here, are surveyed by making a traverse survey, which'is a,series of tangents carefully measured as to length and azimuth. In such surveys some of the subject area is outside the traverse and other land not in the subject area is included. In order to determine the area of the subject land the extent of the areas thus excluded or included are balanced' against each other. Sometimes this is done by approximation only and sometimes by measuring these areas by means of offset lines at right angles to the tangents. The latter method is the more accurate and it was used in the recheck survey made by the defendant.
*56 . When plaintiffs became dissatisfied with defendant’s survey they sent their own engineers to make a test survey. ' They went to a place called Panther Creek and found that, a' considerable amount of cleared acreage.had' been excluded-at this point. This particular location, however, was hardly ¡a fair test of the accuracy of the whole survey.
Based on this test, however, plaintiffs complained to defendant about the survey. The resident engineer, made some checks on the survey, and then accompanied plaintiffs’ engineers on some tests they made. He then recommended to the District Engineer that a recheck survey be made, and this was done. This showed that as to parcel 2 the original computation was about 25 acres more than the area actually, cleared, and that as to parcel 3 it was about 19 acres less than the area actually cleared. The original computation, therefore, showed that plaintiffs had cleared about 6 acres more than they actually cleared. They were paid, however, on the basis of the original computation. . 1
It seems that quite a little ill-feeling developed between the parties about this survey, but we are of opinion that defendant made an honest effort to determine as accurately as possible the area actually cleared. We are convinced that defendant did not act arbitrarily nor capriciously nor in bad faith..:
Plaintiffs also complain that the acreage was measured on a horizontal plane rather than according to the slope of the land. It was measured on a horizontal plane. • •
The contract provided for payment on the basis of' “the actual acreage cleared as determined by computation based on field surveys.” Acreage is measured on a horizontal plane whether or, not the land is level, unless the contract provides to the. contrary. The evidence of this is overwhelming. Plaintiff Holland Page himself testified that he paid a subcontractor on this job on this basis.
3. Plaintiffs’ next complaint is that 48.03 acres were erroneously excluded from the tract they were to clear and put in the tract to be cleared by the Schutt Construction Company. This is correct. However, plaintiffs are not entitled to payment for the clearing of this acreage because they did not clear it. This acreage was cleared by the Schutt Construction 'Company.
*57 4. Plaintiffs’ contract called for completion of the work on July 7,1943. It was completed on September 30, 1943. Defendant has charged plaintiffs with the cost of inspection and superintendence and rental of defendant’s equipment from July 16 to September 30, and the amount was deducted by defendant from payments due plaintiffs. These were actual damages sustained by defendant on account of plaintiffs’ failure to complete the work within the contract time. Defendant was entitled to collect these actual damages since the contract provided that “liquidated damages for delay will not be prescribed,” and none were-assessed. LeRoy Collins, Receiver v. United States, 93 C. Cls. 369; John M. Whelan & Sons, Inc., v. United States, 98 C. Cls. 601; 319 U. S. 770; Modern Industrial Bank v. United States, 101 C. Cls. 808, 821; Firemans Fund Indemnity Co. v. United States, 104 C. Cls. 648, 678; 63 F. Supp. 750.
5. Defendant is admitttedly due , plaintiffs the sum of $100.00. A voucher for this amount w;as sent plaintiffs, but they refused to accept payment. Plaintiffs are entitled to recover this amount.
Judgment for plaintiffs against the defendant will be entered in the sum of $100.00.
Howell, Judge; Maddek, Judge; LittletoN, Judge; and JoNES, Chief Judge, concur.