**HUNT AND WILLETT, INC., for itself and for the Use of United States Fidelity and Guaranty Company,**

v.

**The UNITED STATES.**

**No. 376–58.**

United States Court of Claims.

Dec. 11, 1964.

Rehearing Denied March 12, 1965.

Kahl K. Spriggs, Washington, D. C., for plaintiff. C. Edward Hartman, II, Annapolis, Md., and Patrick A. Geraghty, Seattle, Wash., of counsel.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, Washington, D. C., for defendant. Mary K. Fagan, Washington, D. C., was on the brief.

Before COWEN, Chief Judge, DURFEE, DAVIS and COLLINS, Judges, and WHITAKER, Senior Judge.

DAVIS, Judge.

Standing squarely on the record made before the Claims and Appeals Board of the Corps of Engineers (except as to the amount of recovery), the plaintiff-contractor insists that it is entitled to equitable adjustments under the Changed Conditions and Changes articles of its contract, as well as remission of liquidated damages assessed against it for unexcused delay in completion. The contract, made in 1951–1952 with the Corps of Engineers after open bidding, was for construction of the intake structure and outlet diversion at the Lucky Peak Dam, near Boise, Idaho. The price was $396,-610, and the work was to be finished not later than 150 calendar days after receipt of the notice to proceed (January 14, 1952). Plaintiff's work was the third of five separate phases composing the overall project; the first two units had previously been accomplished by other contractors, and two later phases were to follow.

Of plaintiff's various claims connected with this contract only three are presented in this suit. Each of these three items was decided adversely to the contractor, on the merits, by the Claims and

Appeals Board. Plaintiff's position is that the Board misconstrued the contract and failed to follow the overwhelming evidence which should have compelled the Board to uphold the claims under the Changes, Changed Conditions, and Liquidated Damages provisions of the contract. Our Trial Commissioner has found the Board correct in its legal interpretations and adequately supported in its factual findings.

## I

The unique aspect of this case—tried and reported by the Commissioner before the decision in United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963)—is the parties' reversal-of-roles with respect to the introduction of *de novo* evidence in this court. Except on the issue of damages (which the Board had not tried or decided since it ruled in favor of defendant), plaintiff offered only the administrative record and objected to the Government's presentation of any new evidence not directed strictly to the amount of damages. Over these objections, the Government introduced much *de novo* evidence, some of which admittedly bore on the issue of liability. The plaintiff now argues that the Commissioner's findings are wholly vitiated because he took account of this additional evidence. The defendant's answer is that, although some of the Commissioner's subsidiary findings may rest in minor part on *de novo* evidence, all of his major and dispositive findings are properly grounded in the administrative record. For this reason, the Government does not press us to revise all the findings to conform only to the materials before the Board (although it does not formally recede from its general position that the Board alone can take evidence).

We need not decide, in this case, whether and to what extent we can follow the course taken in Stein Bros. Mfg. Co. v. United States, Ct.Cl., 337 F.2d 861, 162 Ct.Cl. 802, decided July 12, 1963, and later decisions [1] of considering *de novo* evidence on the issue of the acceptability of administrative findings made under the contract. With keen foresight, the Commissioner has made separate and distinct findings—as to each of the three claims presented by plaintiff and on all major factual issues—first, on the basis of a review of the Board record alone, and, second, on the basis of the entire record in this court including the new evidence. As will appear in Part II of this opinion, we agree with these findings of the Commissioner and therefore determine that the Board's crucial findings are sufficiently sustained by the record before it, as well as by the court record. Whatever be the correct position on *de novo* testimony in this case, the plaintiff cannot prevail. We therefore do not undertake the laborious task of reviewing each and every subsidiary finding to make sure that it rests, or can rest, solely on the Board record. Since our conclusions and critical findings are all supported both by the Board proceedings and by the judicial record, it is unnecessary and useless to borrow trouble by engaging in the burdensome process of combing each of the preliminary findings.[2]

1. WPC Enterprises, Inc. v. United States, Ct.Cl., 323 F.2d 874, decided Oct. 11, 1963; Wingate Constr. Co. v. United States, Ct.Cl., No. 394-60, decided Jan. 24, 1964; Potter v. United States, Ct.Cl., No. 517-59, decided July 17, 1964, slip op., pp. 10-11. See, also, Commerce Int'l Co. v. United States, Ct.Cl., 338 F.2d 81, decided Oct. 16, 1964; National Presto Industries, Inc. v. United States, Ct.Cl., 338 F.2d 99, decided Oct. 16, 1964, slip op., pp. 4-5 (n. 2); Litchfield Mfg. Corp. v. United States, Ct.Cl., 338 F.2d 94, decided Oct. 16, 1964, slip op., p. 29.

2. If we were to do that properly, we would have, initially, to resolve a puzzling legal question not determined by the Stein Bros. line of decisions, and, then, to make delicate distinctions, founded on our ruling on that question, between the various pieces of *de novo* evidence. The legal issue flows from our holding in Stein Bros. that, if the Board has not taken evidence on the quantum of recovery, the parties can try that question in this court. Plaintiff chose to introduce such evidence here, and thereby necessarily consented to the defendant's presentation of countervailing

Cf. Hoffman v. United States, Ct.Cl., 340 F.2d 645, decided May 15, 1964.

■ We are the less hesitant to reject plaintiff's invitation to undertake that troublesome but needless chore since plaintiff has not helped us by filing proper exceptions to the Commissioner's findings. The court's rules contemplate that the parties will except to each finding with which they disagree and will give appropriate record references for each exception. See former Rules 45(c) and (e), and 46(c), and present Rules 57(c) and (f), and 58(c). Decisions implementing those rules have refused to take account of general exceptions which fail to give us the help of pinpointing the alleged error or of isolating the particular part of the record on which the exception relies.[3] Instead of commenting on the Commissioner's findings individually and in detail, the plaintiff has simply set forth its own extended narrative version of the facts, appending for good measure the complete findings it proposed to the Commissioner. Exceptions of this type impose too great a burden on the court to separate, for itself, the wheat from the chaff. The defendant has given us, finding by finding, a tabulation of the extent to which the Commissioner's findings are supported (in the defendant's eyes) by the administrative record, but the plaintiff has not provided any comparable aid. Plaintiff, therefore, has no standing to insist that each and every one of our findings on liability reflect only the evidence in the Board record.

II

*A.* The first claim relates to the crumbling of the hill rising over plaintiff's work-place. Above and about the floor of the intake channel and the tunnel entrance, around which plaintiff's job was centered, there arose a steep semicircular slope, man-made, composed of jointed and fractured basalt. During performance this slope raveled considerably so that, from time to time, pieces of rock fell down into the working area in sufficient quantities and force to endanger the workmen below. To protect its employees plaintiff had to undertake scaling operations—in which skilled workmen suspended on the slope pry or wedge loose or potentially loose rock from the surface—much more extensively than it had contemplated. Meanwhile, the contract work had to be suspended. Claiming that the raveling anticipated by the parties was minor and that the excessively raveled condition of the slope which was encountered in performance was an unknown and unusual physical condition, plaintiff sought an increase in cost under Article 4, Changed Conditions (finding 10), for the additional scaling, the incidental delay and the loss of efficiency. The Claims and Appeals Board denied this claim, although it did allow the costs of recuperating from sudden large rock slides which occurred on May 8, 1952.

The Board's determination had both legal and factual components. Article 4 provided for adjustments due to "subsurface and/or latent physical conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown physical

evidence on damages. The difficulty is that defendant did not confine itself to calculations and figures but introduced much evidence to prove that the plaintiff could not have suffered damage from the Government's acts because the plaintiff's own performance was so inefficient that it must have caused any loss suffered in the course of the contract work. If we were to review each separate finding to determine what part could rightfully rest on *de novo* evidence, we would first have to decide how much of the defendant's case was made admissible by the plain-

tiff's voluntary introduction of *de novo* evidence on damages. Then we would have to apply that ruling to each segment of the defendant's evidence.

3. E.g., Societe Anonyme des Ateliers Brillie Freres v. United States, Ct.Cl., No. 392–59, decided Jan. 11, 1963, slip op., p. 9; Schmoll v. United States, 63 F.Supp. 753, 758, 105 Ct.Cl. 415, 456, cert. denied, 329 U.S. 724, 67 S.Ct. 69, 91 L.Ed. 627 (1946); Manufacturers' Casualty Ins. Co. v. United States, 63 F.Supp. 759, 760– 761, 105 Ct.Cl. 342, 351 (1946).

conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the drawings and specifications * * *." Under this clause the Board found that the raveling which occurred here was "neither a subsurface, latent physical condition nor one of unusual nature differing materially from that normally encountered in work of the character provided in this contract" (finding 69). We agree with the Trial Commissioner that, to the extent the Board interpreted the contract, it did so correctly, and, to the extent it found facts, its findings are properly supported in the record before it (as well as in the more extensive record before the court).

■■ Raveling, as the Board found, consists of surface small rock falling down a cliff or slope by force of gravity. That this condition was expectable was clearly indicated in the contract documents which listed scaling (i. e., the accepted method of preventing raveling) as one "principal feature" of the work (finding 14); repeatedly told the plaintiff, without qualification, that scaling would be required (see findings 18, 19, 20, and 21); [4] and declared that "no separate or direct measurement or payment will be made for * * * scaling, since the work and cost thereof shall be considered incident to, included in, and paid for under the contract prices for concrete bid items" (finding 22). The contractor was thus explicitly warned in writing that it would have to scale in order to stave off raveling.

■ Plaintiff's argument that the amount of raveling it had to face was extraordinary and unusual is contradicted by the Board's well-supported findings, which are reflected in our own findings. The considerable tendency of fractured basalt, in this geographical area, to ravel (especially in times of freezing and thawing) is shown by the experience of the prior contractor on this very project, the expectations of two other bidders for the work plaintiff undertook, the conclusions of plaintiff's own engineering expert, and the common knowledge as to the characteristics of such rock in the Pacific Northwest. See findings 29, 31, and 69. Plaintiff's representatives made an inadequate investigation of the site before bidding, underestimating the probable extent of raveling because they failed to make sufficient inquiry and investigation. Finding 31.[5] Plaintiff now emphasizes a statement in a Government Geologic Report (of which plaintiff was unaware until the Board proceedings) that "*minor* raveling can be expected to continue but should not be construed as a matter of concern" (emphasis added). As the Board points out (finding 69), however, this meant minor raveling for fractured basalt of this weathered type, after periodic scaling had been undertaken—not minor raveling if periodic scaling was omitted. Since plaintiff failed to provide periodic scaling (so the Board properly found), there is no showing that the actual raveling was other than "minor" in the sense of the Geologic Report. In any event, this one statement does not outweigh the other parts of the record on the basis of which the Board could and did find that the amount of raveling met by plaintiff was not so unusual or extraordinary as to fall within the Changed Conditions clause.

■ Plaintiff also charges the Board with inconsistency in finding that the

4. The specifications provided, for instance, that "Scaling shall be performed as required to maintain work areas in a safe condition", "Scaling shall include the removal of loose rock from all slopes as required to maintain all work area in a safe condition without hazards of rock falls", and "As necessary for safety, loose or fractured rock shall be scaled and removed from work areas."

5. The "Site Investigation and Representations" clause of the contract (finding 15) placed the risk, generally, on the contractor of ascertaining, from the reasonably available sources, the nature of surface and sub-surface materials. See the discussion infra.

sudden rock slides on May 8, 1952, were within the Changed Conditions article, while the more-or-less continuous raveling was not. There is no conflict. The Board found expressly that the slides (which it carefully distinguished from raveling) were due to the defendant's faulty design of the slope or to a hidden fault and joint system, within the slope, not reasonably discoverable by the contractor before bidding—and that scaling the surface cliffs would not forestall such major falls. On the other hand, the raveling occurred, in the Board's view, because of the known "fractured, soft, slabby, altered and weathered" condition of the basalt, taken together with expectable weather conditions and the erosion due to alternate freezing and thawing of the cliff. These conclusions are fully supported by the administrative record.

■ B. Alternatively, plaintiff urges that it is entitled to damages because the defendant, which knew the true situation as to raveling, failed to disclose its information to the contractor before the bidding. No misrepresentations (oral or written) are asserted, nor any refusal to answer inquiries, but solely a failure to proffer the Government's information bearing on raveling.[6] We find no such breach because, under this contract, there was no obligation on the Government to volunteer facts which could reasonably have been discovered through plaintiff's own investigation and pursuit of leads given by the contract papers. The "Site Investigation and Representations" paragraph (finding 15) made the contractor responsible for satisfying itself "as to the nature and location of the work, the general and local conditions, particularly those bearing upon * * * uncertainties of weather, river stages, tides or similar physical conditions at the site, the conformation and conditions of the ground * * * and all other matters

upon which information is reasonably obtainable and which can in any way affect the work or the cost thereof under this contract." The clause also cast the responsibility on the contractor "as to the character, quality and quantity of surface and sub-surface materials to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government, as well as from information presented by the drawings and specifications made a part of this contract."

■ Where the contract incorporates such a clause, the contractor has no claim if the missing information would have been obtained through the inquiries contemplated by the article. Flippin Materials Co. v. United States, 312 F.2d 408, 413–415, 160 Ct.Cl. 357, decided Jan. 11, 1963.[7]

■ Plaintiff fails this test. We have pointed out that it made an inadequate inspection of the site, failed to make inquiries of the defendant's personnel or of the prior contractor then working in the area, and failed in general to make a proper evaluation of the visible and expectable conditions. If these steps had been taken, plaintiff would have had substantially all the necessary information. In addition, plaintiff did not examine the available logs of drill holes in the vicinity of the slope or follow up a note that "fault and joint systems known to exist in inlet area are not represented on this drawing"; both of these were mentioned in one of the contract drawings (finding 24). Plaintiff's own expert before the Board testified that a careful and prudent bidder would not have relied upon visual observation alone but would have pursued the drawing note as to "fault and joint systems." If this had been done, plaintiff would have ob-

---

6. Plaintiff admits that, shortly after the bidding, a Government engineer did warn it to expect substantial raveling in the early spring; plaintiff's representative replied that the engineer was unduly concerned. Finding 32.

7. The rule of Helene Curtis Industries, Inc. v. United States, 312 F.2d 774, 160 Ct.Cl. 437, decided Feb. 6, 1963, is obviously inapplicable to information covered by the "Site Investigation and Representations" article. See 312 F.2d at 777–778.

tained the Government's Geologic Report, discussed above, referring to periodic scaling and "minor" raveling, and containing much information on the geologic structure of the slopes.[8] A "contractor cannot call himself misled unless he has consulted the relevant Government information to which he is directed by the contract, specifications, and invitation to bid." The contractor cannot "rest content with the materials physically furnished to him; he must also refer to other materials which are available and about which he is told by the contract documents." Flippin Materials Co. v. United States, supra, 312 F.2d at 414 (footnote omitted).

*C.* The second of plaintiff's claims is that the Board erroneously failed to extend the contract completion date for some 58 days, so as to remit liquidated damages for half of that period.[9] We find no reason to overturn the Board's determination or to remit the liquidated damages ultimately assessed. The administrative findings of fact are adequately supported by the administrative record on the claimed extensions for (a) unduly severe weather and (b) raveling and scaling. With respect to the latter, the Board found explicitly that much of the alleged delay was concurrent with weather delays already covered by extensions of time and it found implicitly that the raveling delay was not beyond the contractor's control (within the meaning of the Delays-Damages clause). We also reject plaintiff's unique argument that the contract completion date (150 days from receipt of notice to proceed) should not be calculated from January 14, 1952, when plaintiff received the

notice, but from February 2, 1952, when the formal written contract was finally delivered. The parties were bound from the time of the award on December 21, 1951, and plaintiff expressly agreed to commence work within five days after receiving written notice to proceed. This notice was not unreasonably delayed and plaintiff accepted it as proper. The receipt of the formal contract was irrelevant to the agreed period for performance. Finally, we accept—for the reasons given in Part I, supra—the Trial Commissioner's finding (and alternative conclusion) that plaintiff's own fault caused inexcusable delays for at least the 29 days for which liquidated damages were assessed. Finding 67.

*D.* The last claim is that defendant ordered plaintiff to accelerate the job and complete the work within the original 150 days without time-extensions. This facet of the case is likewise meritless. As already indicated, a substantial extension of time was in fact allowed and the Board properly denied the requests for further extensions. It is admitted that the plaintiff did not complete the work within the extended time. Accordingly, the Board held correctly that there was no actual acceleration in performance by plaintiff. Nor was there any requirement by the Government that plaintiff complete the work in less time than allowed by the contract, as properly extended. The Government did urge plaintiff to complete the work within proper time, but that it had a full right to do.

The plaintiff is not entitled to recover and the petition is dismissed.

---

8. Since plaintiff did not have this report before it bid, it could not have relied in any way upon the statement as to "minor" raveling. Plaintiff's present understanding of that passage is irrelevant on this point.

9. The original completion date was June 12, 1952. The contracting officer allowed 36 days, extending the date to July 18, 1952. As a result of the Board's decision, five more days were allowed—to July 23, 1952. Since the work was completed on August 21, 1952, liquidated damages of $300 per day were assessed for 29 days (in the sum of $8,700).