Per Curiam :
This case was referred to Trial Commissioner Pañi H. McMurray with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on April 21, 1966. Plaintiff has filed no exceptions to or brief on this report and the time for so filing pursuant to the rules of the court has expired. On June 6,1966, defendant filed a motion to dismiss for default requesting that the court adopt the commissioner’s opinion and recommended conclusion of law, and dismissing the plaintiff’s petition. Since the court agrees with the trial commissioner’s findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Plaintiff is, therefore, not entitled to recover, defendant’s motion is granted and plaintiff’s petition is dismissed.
OPINION OF COMMISSIONER *
McMurray, Commissioner:
On October 21, 1964, after exhausting available administrative remedies, plaintiff filed a petition in this court claiming additional compensation under two contracts with defendant.
On May 12,1965, defendant moved for an order for disposition of the case on the basis of a review of the administrative *1333 record, citing Carlo Bianchi & Co. v. United States, 373 U.S. 709 (1963) as precluding tbe taking of de novo evidence. The motion was allowed by the commissioner on May 26, 1966. The administrative record was filed with the court on June 21, 1966, and proof closed on the same date. Requested findings of fact were submitted by the parties. Findings requested by plaintiff are not supported by any citations to the record as required by Rule 57(c) (l).[1]
Under the rationale of Morrison-Knudsen Co. v. United States, 170 Ct. Cl. 757, 345 F. 2d 833 (1965), where relief is available to a contractor under the “Disputes” clause of a contract, the contractor is not entitled to a trial de novo on the factual questions decided administratively.
The standards for review of an administrative decision are set out in the Wunderlich Act, 68 Stat. 81, 41 U.S.C. §§ 321, 322 (1958). An administrative decision as to factual questions is considered final unless it is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence, 41 U.S.C. § 321. Administrative decisions on questions of law are not final, 41 U.S.C. § 322. See Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951) ; Appalachian Floor Co. v. United States, 144 Ct. Cl. 11 (1958) ; T. C. Bateson Constr. Co. v. United States, 149 Ct. Cl. 514 (1960) ; River Constr. Corp. v. United States, 159 Ct. Cl. 254 (1962). Generally speaking, the evidence has to be such that, upon review of the entire record, a reasonable man could have reached the conclusion arrived at by the administrative agency.
Plaintiff, a painting contractor, is suing for amounts claimed to be due under two contracts, DA-12-066-AV-2215 and DA-12-066-AV-2217, entered into with defendant for painting portions of certain buildings at Fort Benjamin Harrison, Indiana. The claimed sum of $30,567.88 over and above the contract prices ($5,334.80 on contract No. DA-12-066-AY-2215 and $25,233.08 on contract No. DA-12-066 *1334 AV-2217) is for materials and labor costs, including overhead and profit.
The contracts, DA-12-066-AV-2215 and DA-12-066-AV-2217, were awarded to plaintiff on June 21, 1962, in the respective amounts of $9,433 and $33,688.
The contracts required the use of TT-P-102, Class B type paint, of a color to be specified by the contracting officer. Before work began on the project, plaintiff was informed that the color, of the paint would be white. Subsequently, plaintiff asked permission to substitute Class A white paint for the Class B white paint[2] called for in the contracts. Defendant agreed to the requested change, but there was to be no increase in the contract price.
The contracts contained the standard construction clauses and the standard form of “Disputes” clause usually included in contracts awarded by defendant.
The General Conditions of Contract Specifications included, among others, the following provision:
GC-2 CHARACTER OF WORK AND MECHANICS. The Contractor shall perform all work in the best and most workmanlike manner, using only qualified, careful, and efficient workers, skilled in their respective trades.
Technical provisions of the contract specifications include the following:
TP 2-04 MATERIALS: * * * Materials shall conform to the specifications shown in the painting schedule herein and to the requirements hereinafter specified. A certified statement of analysis and tests shall be furnished for each batch. * * *
a. Exterior oil paint shall conform to Federal Specification TT-P-102 Class B of color specified by the Contracting Officer.
«{•
TP 2-06 CLEANING AND PREPARATION OF SURFACE:
a. General: Building signs, screens, storm windows, hardware and similar items in place prior to painting *1335 shall be removed during painting operation and repositioned in same location upon completion. Such, removal and reinstallation shall be done by workmen skilled in the trades involved. * * * All surfaces to be painted shall be cleaned of all dirt, oil, grease, or other foreign substances with cleaning solvent, scrapers, sand paper, and/or wire brush. * * *
b. Primmg: All unpainted surfaces or areas which paint has fallen or rubbed off shall receive one coat of priming paint, and all areas repaired with plastic wood or other material shall be primed prior to application of finish paint.
*****
TP 2-07 PAINT APPLICATION:
a. General: The finished surfaces shall be free from runs, drops, ridges, waves, laps, brush marks, and variations in color, texture, and finish. The hiding shall be so complete that the addition of another coat of paint would not increase the hiding. All coats shall be so applied as to produce film of uniform thickness. * * * *****
TP 2-08 SURFACES TO BE PAINTED:
a. General: The surfaces listed in the painting schedule below shall receive the surface preparation, paints, and number of coats prescribed. Explanatory information for use with the painting schedule is as follows:
(1) Colors and tints, shall match the respective color specimens selected by the Contracting Officer. Colors and tints shall conform to Federal Standard Number 595. All preceding coats shall match approximately the color of the finish coat.
(2) Method of surface preparation and pretreatment shown in the schedule is for identification purposes only. Cleaning and pretreatment of surfaces prior to painting shall be accomplished in accordance with the detailed requirements hereinbefore described.
H; s|: Hi #
The painting schedule provided, among other requirements, that one coat of TT-P-102 would be applied to the exterior woodwork after priming as required.
Plaintiff filed a claim with the contracting officer for extra material and labor costs resulting from the type of paint used. - Plaintiff also alleged the designation of white paint by defendant made it necessary to “pile the paint on” rather than spread it in the usual manner. The claim of plaintiff *1336 was disallowed by tbe contracting officer and plaintiff filed an appeal to tbe Armed Services Board of Contract Appeals, hereafter ASBCA (ASBCA No. 8680) under tbe appropriate provisions of the contracts on tbe theory that tbe specification of white paint by tbe contracting officer was a constructive change which resulted in the increased costs claimed.
In addition, plaintiff filed a similar claim under the other contract which was also denied by the contracting officer. This was also appealed to the ASBCA (ASBCA No. 8681).
Defendant withheld $753.30 for inspection costs incurred because of delay in completing both contracts. Plaintiff claimed these costs were wrongfully withheld, which claim was denied. Plaintiff also appealed that decision of the contracting officer to the ASBCA (ASBCA No. 8823) ,[3]
A hearing was held before the ASBCA on appeals Nos. 8680, 8681 and 8823, witnesses were heard and many documents were offered and received in evidence. On September 20, 1963, the ASBCA denied plaintiff’s appeals, ASBCA Nos. 8680, 8681 and 8823.[4] Plaintiff’s motion for reconsideration was denied by the ASBCA on November 5, 1963, ASBCA Nos. 8680,8681 and 8823.[5]
After considering the record in ASBCA No. 8680 the Board concluded:
Considering all of the facts and surrounding circumstances and the reasonable inferences arising therefrom, the Board finds that the appellant has failed to present sufficient proof to warrant entitlement to additional compensation, as claimed, or to an extension of time for the completion of the work.
The appeal is denied.
The Board stated with reference to ASBCA No. 8681:
At the hearing, no evidence for either side was presented. Instead, it was stipulated by the parties that decision in this appeal should be similar to the decision in the first appeal, ASBCA No. 8680.
V V í» ¥ ¥
*1337 Accordingly, since the Board has denied ASBCA No. 8680 discussed above, the instant appeal under ASBCA No. 8681 is denied.
Plaintiff claims the ASBCA was in error because it failed to consider (or did not discuss in the opinion) the evidence in the record which indicated that an ordinary one-coat application of white paint would not hide the previous color on the building surfaces to be painted which was buff or cream color.
The defendant’s defense to plaintiff’s claim is essentially twofold: first, it is the stated position of defendant that an ordinary coat of white paint would properly hide the cream color underneath; and second, many of the painters hired by plaintiff to work on the buildings in question were substandard painters and did not prepare the walls properly, i.e., they did not clean the dirt and soot off the walls of the buildings as required by Specification TP 2-06 of the contract before painting them.
With respect to the first point, the defendant offered as a witness a paint chemist who testified that one coat of white would have hidden the previous coat of paint. The Deputy Post Engineer of Fort Harrison testified that a single coat of white paint was painted on a part of one of the buildings involved in order to determine if a single coat of white would provide proper hiding. After the sample was painted, the Assistant Deputy for Post Operations decided that white paint would be satisfactory.
In rebuttal, plaintiff presented two expert witnesses who testified that, in their opinion, one coat of white paint would not hide the undercoat of cream or buff.
As to the second contention of the defendant, there was considerable agreement between the parties that the paint job in question exhibited poor workmanship in the form of runs, drips, skipped areas, etc., and a generally excessive application of paint. There was a considerable difference of opinion of the parties with respect to the cause of the trouble encountered. Plaintiff’s witnesses testified generally that the failure to obtain a proper paint job was traceable to the inability of the painters to hide the previous coat in a satisfactory manner, but their inability to do so was not due to *1338 lack of competence of the personnel hired locally. Defendant’s witnesses testified to the contrary, stating that it was their observation that both supervision and execution of the paint job were lax, the painters failed to properly prepare the surfaces of buildings before applying a new coat of paint, and that properly skilled painters from Louisville doing a similar paint j ob on other buildings were able to satisfactorily apply an ordinary single coat of paint.[6] Plaintiff presented no new witnesses or additional evidence to rebut defendant’s proof on this point.
As of the date of plaintiff’s bid, Federal Paint Specifications contemplated that Class B paint would not be used as white paint.[7] But, plaintiff’s failure to foresee or assume that white paint would be specified does not automatically entitle it to a recovery. Included in the legal concept of a “change” is the necessity for showing that the contractor has incurred increased costs. In order to prevail on the question of liability, the contractor necessarily has to establish that it was damaged in some degree, even though the precise amount of damages may not be initially litigated, and a trial may be limited to the question of liability. In the present case, only the liability question was litigated before the ASBCA.
Plaintiff’s argument assumes that a thick coat of paint was necessary to effect proper hiding. The ASBCA concluded otherwise, on the basis of the testimony of defendant’s witnesses and such conclusion is supported by substantial evidence. Plaintiff has not met its burden of proof in establishing, by competent evidence, that the ASBCA was arbitrary or capricious in accepting the testimony of defendant’s witnesses that excessive application of paint was a consequence of supervision and labor of less than ordinary competence, rather than the testimony of plaintiff’s witnesses who *1339 insisted it was impossible to hide the previous color with a single ordinary coat of white.[8] Plaintiff is not entitled to recover and the petition should be dismissed.
CONCLUSION OF LAW
Upon the foregoing opinion which includes therein the findings of fact and which is adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover. The petition is therefore dismissed.

 The opinion and recommended conclusion of law are submitted pursuant to the order of the court under Rule 57(a). The facts are stated in the opinion.

 Schmoll v. United States, 105 Ct. Cl. 415, 63 F. Supp. 753, cert. denied 329 U.S. 724 (1946) ; Manufacturers’ Casualty Insurance Co. v. United States, 105 Ct. Cl. 342, 63 F. Supp. 759 (1946) ; Societe Anonyme des Ateliers Brillie Freres v. United States, 160 Ct. Cl. 192 (1963) ; Hunt & Willett, Inc. v. United States, 168 Ct. Cl. 256, 351 F. 2d 980 (1964).

 Class A paint Is a white chalking paint, a self-cleaning paint designed for all purpose application, whereas Class B paint is a nonchalking paint designed for use on wood trim over brick. Class A and Class B type paints specified In the contract have the same hiding qualities.

 The claim involving inspection costs, ASBCA No. 8823, is not included in plaintiff’s petition to this court.

 See n. 3, supra.

 See n. 3, supra.

 Although the record is not clear as to the exact degree of skill held by the workmen brought in from Louisville, i.e., whether they were highly skilled or only of average skill, a reasonable interpretation of the contract requirement that plaintiff use “only qualified, careful, and efficient workers, skilled in their respective trades” merely requires that plaintiff provide workers of an average level of skill in the trade.

 A new specification was issued on June 21, 1962, the date of award of the contracts to plaintiff, which allowed use of Class B paint as a nonchalking white paint.

 In Its brief, plaintiff failed to point out specifically wherein the ASBCA was in error in accepting the testimony of the defendant’s witnesses over that of plaintiff’s witnesses. Defendant contends that plaintiff’s failure to detail specifically the errors of the ASBCA was fatal, and rested defendant’s case on that ground, without any attempt to support, in its argument, the findings of the ASBCA.